IN ERROR.<br>......<br>ALBANY,<br>April, 1816.<br>PARKHURST<br>v.<br>VAN CORTLAND.

Judgment of affirmance.

———◄◊※◊►———

JOHN PARKHURST,
GEORGE W. FREDERICK PARKHURST, and } *Appellants.*
ABEL PARKHURST

against

AUGUSTUS VAN CORTLAND, <span style="float:right">*Respondent.*</span>

IN the month of *January*, 1809, the appellants filed a bill in the court below against the respondent, wherein they alleged, that in *April*, 1797, they applied to the respondent for certain lands in the western country, who consented to sell or lease the same to the appellants, but on account of their being undivided, could not then perfect the contract, but made, and delivered to the appellants, for their security, the following memorandum : " Messieurs *John Parkhurst, Frederick Parkhurst,* and *Abel*

Bill for a speci-<br>fic performance<br>of an agreement<br>to sell or lease<br>land. The ap-<br>pellants had en-<br>tered upon the<br>land under an<br>assignment of a<br>license given by<br>the respondent<br>to occupy and<br>improve the<br>land ; they af-<br>terwards surren-<br>dered that li-<br>cense to the re-<br>spondent, who<br>gave them a

written memorandum authorizing them to possess the land, and promising to give them the preference to purchase or lease the land. It was proved that, at various times, the respondent had encouraged the appellants to improve and build on the land, by assurances that no advantage should be taken of their labour, and that when his title was perfected by a partition of the land, they should have a lease in fee, or a deed at the rate wild lands were selling. The respondent, in his answer, denied any other agreement than the memorandum, and relied on the statute of frauds. It was held, that the appellants having gone on the land and made improvements, this was a part-performance, and took the case out of the statute ; that, although the memorandum was in itself uncertain, yet, as a part-performance was made the basis of the claim to a specific execution of the agreement, parol evidence might be connected with the memorandum for the purpose of making out the contract; and there being satisfactory evidence of an agreement, independently of the memorandum, and the conduct of the respondent being a fraud on the appellants, a specific performance was decreed.

IN ERROR
......
ALBANY,
April, 1816.

PARKHURST
v.
VAN CORTLAND.

*Parkhurst*, have applied to me for leave to possess my lot number four, in the second allotment of *Oriskany* patent, which contains, by the late *James Cockburn's* survey, 740 acres. I have, accordingly, given them leave, and promised them as soon as I can obtain a release from Mr. *Clarke's* heirs for said lot, to give them the preference, either to purchase or take a lease for said lot. *April* the 7th, 1797. *August. V. Cortland.*" That, afterwards, for the further security of the appellants, and to induce them to make permanent improvements, the respondent agreed, that in case of a sale of the land under such agreement, the price should be the actual value at the time of the contract, (superadding interest up to the time of the conveyance,) or the value at the time of the conveyance, computed as wild and unimproved land, at the election of the appellants, the sale to be on as liberal credit as the appellants could ask, on payment of interest annually; and, in case of a lease of the premises it should be in fee, at the usual and customary rents of the country. That upon the making of the contract, the appellants entered upon the possession, and commenced the improvement of the premises, and have continued thereon to this time, having cleared 100 acres of land, set out an orchard of 100 apple and other fruit trees, erected two ame houses, a barn and sheds, at an expenditure of about 800 dollars. That a partition had been made, and that the appellants applied to the respondent for a performance of the contract, by a sale, or lease, of the premises, but were informed that some new obstacle had arisen among the claimants; the respondent, at the same time, recognising his obligation under the contract, and strongly assuring the appellants that he would perform it, as soon as he should be enabled so to do. That the respondent proposed to the occupants of his land, in the patent, to take short leases, at the expiration of which the subsisting obstacle, to a disposition of the land, would be removed, to which the appellants objected that the measure might prejudice the original contract; upon which the respondent renewed his assurances to perform the contract as soon as he should be enabled so to do. That upon these assurances, *G. W. F. Parkkurst*, one of the appellants, took a lease of the premises, except ninety acres and one fourth, (before leased to *John Cotter*,) from the respondent's attorney for three years, at an annual rent of 80 dollars, at the same time disclosing to the attorney the subsisting contract;

and in accepting the lease he was finally influenced in no small degree by a letter from the respondent to his attorney. In this letter, dated *February* 26, 1803, which was an exhibit in the cause, the respondent says, " In order, therefore, to enable me to give a good title to those that I may be disposed to sell *to*, I have drawn and delivered to Mr. *Benjamin's* son, who at present is *Clarke's* agent here, a release for the lots I have, and mentioned in the ticket I retained, which I am informed he sent to *Europe* to be executed, and will, probably, be here in the course of a few months, when I shall determine either to sell or give a permanent lease. In the mean time, I wish you, by virtue of the enclosed power, to convene the occupiers or possessors of my lots, and inform them, that it is my desire they respectively take a lease for three years under such moderate rent as you shall approve of, and paying the taxes for what they shall possess, and covenant to surrender the same to me at the expiration of said term." The attorney delivered a copy of this letter to *G. W. F. Parkhurst.* That the respondent had since recognised the original contract, and renewed his assurances to fulfil it; and that, about twenty months after the expiration of the lease, the respondent demanded a surrender of the premises, upon the penalty of paying *double rent, declaring* in and by a notice to quit, that the appellants should never, by his consent, occupy any part of the premises; against which the appellants by letter remonstrated, and insisted on their rights under the contract; but the respondent persisting in his oppressive proceedings, had instituted an action of ejectment to recover the premises, &c. The bill concluded with a prayer for specific relief, or in such other way as might be agreeable to equity.

The respondent answered, that the appellants having taken possession of the premises, in or before the year 1796, without his consent, about the 7th of *April*, 1797, applied to the respondent for lot No. 4., who, after informing them that he would not sell or lease the lot, for want of a partition, did, to protect the lot, make, and deliver to them the memorandum set forth in the bill. The respondent denied that he understood that the lease to be given was to be in fee, or for any determinate period, at the customary rents; nor did he agree as to the price of the land, or make any agreement other than what is contained in the memorandum. He alleged that the appellants

*IN ERROR.*
......
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

IN ERROR.
........
ALBANY,
April, 1816

PARKHURST
v.
VANCORTLAND.

entered on the land before they had obtained his consent, and had been compensated for their improvements by the profits; and he denied that he had given them the assurances mentioned in the bill, or that his letter to his attorney was shown to them by his authority, or that he had recognised the memorandum, or given assurances of a permanent lease, since giving the lease for three years. He admitted the proceedings as stated in the bill, to remove the appellants from the land; and that a partition, with *George Clarke*, was completed in *June*, 1806, and that by the final division of lot No. 4., only subdivision lots, 5th, 6th, and 7th, containing 291 acres, and a moiety of lots, 2, 3, and 8, containing 250 acres, and a fourth, fell to his share. The respondent, in his answer, claimed the benefit of the statute of frauds, as if it had been pleaded.

*Benjamin Lawrence*, a witness, deposed, that on the 8th of *July*, 1793, the respondent gave him a written contract authorizing him to occupy and improve great lot No. 4.; which contract, in *October* in the same year, he assigned to one of the appellants and *Simeon Parkhurst*, for the *Parkhurst* family. That in the next *April*, the appellants settled on the lot, and commenced improvements, and in the ensuing *December*, the witness informed the respondent of his assignment to the appellants, and of their settlement on the land. That *Simeon Parkhurst*, who was present, exhibited the contract to the respondent, and asked how long before he would give better security; to which the respondent replied, that he would give them a good title as soon as he could obtain a release from Mr. *Clarke's* heirs, either by a durable lease, on good terms, or sell the lot to them, as they chose. That *Parkhurst* preferred a lease, and that the respondent said that he was not in want of money, but only annual interest. That *Parkhurst* informed the respondent that they hesitated in erecting a barn and other buildings, on account of the security for the land not being satisfactory; to which the respondent replied, that they might go on and occupy the lot as if it were their own, and no advantage should be taken of their labour; that they should have the lot as wild land was going in the country at the time he should be able to give a title. The witness was present when the memorandum, set forth in the bill, was given, and the former license surrendered to the respondent, at which time the respondent renewed his engagement to sell, or lease, the land to the appellants as

IN ERROR.
......
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

soon as he should obtain a release from *Clarke*, as land was going at the time he should be able to procure the title, and would take no advantage of their labour. The appellants being reluctant to erect buildings, and make valuable improvements in the present state of the title, the respondent said that they might go on as if the land were their own, adding, that the only obstacle to a title then was Mr. *Clarke's* heirs not being of age. The respondent also stated that the rest of the occupants should be treated in the same manner as the appellants.

The statements of the preceding witness were confirmed by *Simeon Parkhurst*, who had transferred his interest in the contract to the appellants. In the winter of 1803, this witness was present at a conversation between the attorney of the respondent, and the appellant, *G. W. F. Parkhurst*, relative to a three years' lease; the latter objected, that such lease might prejudice the former contract; to which the attorney replied, that it would not affect the contract under the circumstances, and produced the respondent's letter to him, and gave a copy of it to *Parkhurst*. Before the lease was taken, the appellants employed the witness to go to the respondent and ascertain his object in requiring such lease; to which, when stated, the respondent replied, that he owned the land, with other relatives, and his object was to make a division, and such lease should not, in any degree, injure the appellants; that if they refused the lease he should dispossess them; adding, that the appellants should have a lease, or deed, according to the former promise, and that he expected to do it before the short lease expired. *Richard M. Harrison*, another witness, confirmed what had been deposed by *Parkhurst*, in relation to this last conversation, in which, according to this witness, the respondent said that he would, when the partition was made, sell the farm as wild lands were selling; and that, if the appellants expected to be well used, they must take a lease from his agent.

*John Williams* testified that, in a conversation with the respondent in 1796, the latter requested the witness to inform the appellants that he wished them to continue and occupy the land as if it were their own, and to make improvements and erect buildings, but not to destroy any more timber than was absolutely necessary for the use of the farm, and as soon as he could settle with Mr. *Clarke*, he would give them deeds, or leases, at

the rate wild lands were selling, adding, that there was no other impediment, at that time, than the minority of Mr. *Clarke's* heirs. It was proved that similar assurances had been given by the respondent in regard to all the occupants of his lands in the *Oriskany* patent. Several witnesses were examined as to the value of the improvements, and the annual profits of the lands occupied by the appellants.

In a letter from *G. W. F. Parkhurst,* dated *April* 3d, 1806, to the respondent, which was an exhibit in the cause, he said, that " in regard to these lands he had in possession that belong to the respondents, he and his brothers would wish to have the whole he had taken a lease of. If he could have a durable lease, he should be willing to give a large rent, but if not agreeable to the respondent to lease, he should be glad to have the preference of having it on the best terms which the respondent could give. That he and his father had laid out a good deal of property in clearing and building on the respondent's land, and his parents were old, and if they should be obliged to leave it, it would be hard for them; *but we lie at your mercy to do with us as you think most proper.* If the respondent was inclined to sell rather than lease, he would be glad to purchase, and make the best payments he could," &c.

The cause being brought on to a hearing before the late chancellor, [*Lansing,*] a decree was pronounced for the appellants, (after two successive arguments,) to wit, for a lease, in fee, of the premises, upon the customary rents of lands, alike situated in the same patent, and such rent being reported, a final decree was entered, accordingly, in the cause. The respondent afterwards petitioned his honour, the present chancellor, for a re-hearing in the cause, which was granted; and, on a re-hearing, the former decree was set aside, and a decretal order entered, referring it to a master to state an account of the rents in arrear and *mesne profits* received by the appellants, making them an allowance for beneficial and lasting improvements on the premises. From this decree the appellants entered an appeal to this court.

The chancellor assigned his reasons for his decree, for which see 1 *Johns. Ch. Rep.,* 279.

*N. Williams,* for the appellants. The repeated encouragement given by the respondent to the appellants to improve the

land, and erect buildings, is a fraud against which equity will relieve by quieting the appellants in the possession, although all the terms of the contract do not appear.* It is not upon the contract, but on the ground of fraud, that the appellants rest their claim to relief. Although the agreement may be defective, yet the statute of frauds will be no obstacle to the relief; for, in the language of his honour, the present chief justice,† " to allow a statute, having for its object the prevention of frauds, to be interposed in bar of the performance of a parol agreement, in part performed, would evidently encourage the mischiefs the legislature intended to prevent." The cases are numerous in which it has been held, that a person standing by and seeing another make improvements, build, and expend money upon land, was concluded from asserting title.‡ In *Doe*, ex dem. *Winckley*, v. *Pye*,§ Lord *Kenyon* said, that " Lord *Mansfield* had often ruled, that where one person, having title to premises in the possession of another, stands by and sees his tenants exercise acts of complete ownership, by making alterations and improvements, inconsistent with the right of the landlord, and makes no objection to it, but permits him to go on for a length of time, it is evidence to be left to the consideration of the jury, whether he did not mean to be bound by it, as an assertion of right ;" and in this doctrine, Lord *Kenyon* said, that he perfectly coincided. In another case,‖ *Lawrence*, J. observed, that he remembered a case in which Lord *Mansfield* would not suffer a man to recover, even in ejectment, where he had stood by and seen the defendant build on his land. If such be the rule in a court of law, it must apply with equal, if not greater effect, in a court of equity. In *The East-India Company* v. *Vincent*,** the chancellor says, " there are several instances where a man has suffered another to go on with building on his ground, in which the court will oblige the owner of the ground to permit the person building, to enjoy it quietly without disturbance." In *Stiles* v. *Cooper*,†† a tenant for life gave a lease for sixty-one years, and the tenant in tail, lying by during expenditure by lessee, the lease was confirmed.‡‡ These are not proper cases of part performance, but of actual fraud ; and, says *Roberts*,§§ the court will supply an agreement out of the fraudulent suppressions, as well as misrepresentations, of the party deceiving. And again, he observes,‖‖ that parol evidence is let in for the purpose of suppressing the fraud ; and that the courts

IN ERROR.
ALBANY,
April, 1816

PARKHURST
v.
VANCORTLAND.

* Rob. on Frauds, 130— 134. 138. Rob. Fraud. Con. 528, 529. 5 Vin 522. pl. 38. 40. 2 Eq. Cas. Abr. 48. pl. 17.

† 2 Caines' Cas. 109.

‡ 1 Eq. Cas. Abr. 356. pl. 10. 3 Eq. Cas. Abr. 522, 523. pl. 3.

§ 1 Esp. Rep. 364.

‖ 6 Term. Rep. 556.

** 2 Atk. 33.

†† 3 Atk. 692.

‡‡ Et vide. 5 Ves. 688. 1 Ans. 184.

§§ Rob. on Frauds, 134.

‖‖ Ibid, 135.

*IN ERROR.*
........
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

*\* Vol. 3, p. 433.
Et Vide, Ib. 434,
435, 436.
9 Mod. 37.*

do not, in such case, execute the agreement, for the sake of the agreement, but they at once presume it, and enforce it for the sake of disconcerting the fraud. *Wooddeson,* in his Lectures,\* also lays it down as a settled rule, that where there is a parol agreement made for a lease, and the lessee enters and builds, the court of chancery will establish it on the foot of fraud in the lessor, notwithstanding the statute. In the present case we have not a mere tacit acquiescence alone from which to infer fraud, but it has been made out affirmatively; the respondent, for a long series of years, by the strongest and most solemn assurances, encouraged the appellants to cultivate and build upon the land, and he is now seeking, by his own fraud, to appropriate to himself that property which, at length, by their labour, and at their cost, had been rendered valuable. It was upon the ground of fraud that the late chancellor founded his decree, and not on part performance.

It is no objection, nor does it touch the ground of relief, that the statute of frauds requires the written contract to contain the terms of the agreement; the statute prescribes this only in relation to a naked contract, wholly unexecuted, where there is no expenditure under it, and no intervention of fraud, and so were

*† 1 Johns. Ch.
Rep. 280.
‡ 1 Atk. 12.
§ 1 Sch. & Lefroy.
22.*

the cases cited by his honor the chancellor.† In *Clarke* v. *Wright,*‡ and *Clinan* v. *Cooke,*§ cited by him, the rule was taken with the restrictions which I have mentioned. The cases of

*‖ 1 Vern. 151.
\*\* Ib. 159.
†† 1 Johns. Ch.
Rep. 285.*

*Hollis* v. *Whiting,*‖ and *Dean* v. *Izard,*\*\* also cited by the his honor,†† are loose notes without particulars, and without any consideration of the cases on the point, and Mr. *Ro-*

*‡‡ On Frauds,
134. n. 66.*

*berts*‡‡ speaks of these cases as *very unsatisfactory.*

It is no objection, that the relief asked rests partly on the written contract, and partly on parol, in connection with concomitant acts of the parties; for the ground of relief is fraud, in urging the appellants to make improvements by strong assurances of giving them a title. The written memorandum and parol communications are not relied upon as proof of a contract, but as ingredients in a case of fraud, which is aggravated by the respondent having imposed a delusive writing upon the appellants, affording them no security for title, while he stimulated them to improve the land as owners, soon to have

*§§ 9 Johns. Rep.
469.*

a title. "No man," says Mr. J. *Spencer,*‖‖ "should be permitted to say to another, that he has led him into an error by holding out false appearances; but that the party deceived must, never-

theless, bear the loss resulting from that error." The cases cited by his honour the chancellor, upon this point, apply to a case of pure contract only. The same answer is given to the cases of *Vandervoort* v. *Smith*,[*] and *Mumford* v. *M'Pherson*,[†] also cited by his honour[‡] to show that all matters resting in parol were merged in the written agreement; in the latter case, the present chief justice observed, that it was not pretended that there was any fraud in the case; besides, it is a material circumstance, that in the present instance the encouragement given by the respondent was mostly subsequent to the agreement.[§] *Allen* v. *Bower*[||], is in point: there Lord *Thurlow* referred it to the master to supply, by parol evidence, the term rent, &c., which were wholly omitted in the writing, though the evidence of fraud was slight, resting on an expenditure with the owner's consent. The form of the proceeding, in making a final decree on a motion to dissolve the injunction, was admitted to be irregular, but the chancellor adhered to his opinion on the merits. That case was afterwards sanctioned by *Buller*, J., in *Brodie* v. *St. Paul.*[**] In *Clinan* v. *Cooke*,[††] Lord *Redesdale* says, that he should have had difficulty in admitting parol evidence to supply the term omitted in a written agreement for a lease; yet it is evident that he would have admitted it, though in a common case of part performance. There are other authorities to the same effect.[‡‡]

It is not an insuperable objection that the exact terms of the lease do not appear. There are numerous cases[§§] in which the terms of the contract did not appear, and yet the court, as well for a punishment of the fraud as for redress, directed a reasonable execution of the contract, as did the late chancellor in this cause, by referring to the customary rent of lands, in the patent, at the time of the contract. Courts have gone much farther than is asked by us; an owner has been punished for mere passive fraud, in suffering another to build on his land, under his eye, without objection, by depriving him of the property altogether, and granting a perpetual injunction against his claim.[||||] As to the duration of the lease, we do not rest altogether on parol; the respondent's letter to his attorney, mentioning the lease as permanent, comes strongly in aid of the parol testimony, and affords a guard against fraud; the only essential term to be supplied is the rent, which may justly be governed by the customary rents in the patent.

IN ERROR.
........
ALBANY,
April, 1816.

PARKHURST
v.
VAN CORTLAND.

[*] 2 *Caines' Rep.* 155.
[†] 1 *Johns. Rep.* 414.
[‡] 1 *Johns. Ch. Rep.* 282.

[§] 2 *Ves.* 299.
[||] 3 *Bro. Ch. Cas.* 149.

[**] 1 *Ves. jun.* 333.
[††] 1 *Sch. & Lef.* 40, 41.

[‡‡] *Sugd. Law of Vend.* 83. 1 *Bro. Ch. Cas.* 92. 5 *Vin.* 524. *pl.* 39.

[§§] 5 *Vin. Abr.* 522. *pl.* 39. 2 *Eq. Cas. Abr.* 48. *pl.* 17. 3 *Bro. Ch. Cas* 149. *Pow. Cont.* 301.

[||||] 1 *Eq. Cas. Abr.* 356. *pl.* 10. 3 *Eq. Cas. Abr.* 522, 523. *pl.* 3. 2 *Atk.* 83 3 *Atk.* 692. 1 *Exp. Rep.* 364 5 *Ves.* 688. 1 *Inst.* 134. 6 *Term Rep.* 556.

IN ERROR.
·······
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.
* 3 Johns. Rep.
418.  Sugd. Law
of Vend. 43.
Newl. Cont. 171.
9 Ves. 351.
1 Sch. & Lef. 19.

† Sugd. Law of
Vend. 152, 153.
Newl. on Cont.
109.

· † 13 Ves. 423.

It can hardly be conceived, that the respondent's counsel will insist, that there was a want of mutuality in the contract. It is a rule well settled, that under the statute of frauds, the signing of the party to be charged is sufficient.*   And it may be added, that where there is a part performance, either party may inforce a performance ; besides, the respondent had all the appellants' improvements, as a pledge for performance on their part.   Whether the appellant could have recovered damages at law is immaterial; that is no part of the criterion for granting relief.†   So far as the term *preference* in the memorandum of the 7th *April* is concerned, the construction put by the late chancellor, applying it to a purchase or lease, at the election of the appellants, is reasonable.   If applied to the person of the respondent, it subverts the whole contract, at the respondent's discretion.   The respondent's subsequent acts and declarations preclude him from putting this construction upon it ; he invariably refers to the completion of the partition, as the period when he would give a title.

Was the granting a rehearing in this case proper ? Lord *Erskine* says,‡ that " a rehearing is allowed that the judgment of the court may not be surprised."   This reason applies only to the chancellor making the decree, to enable him to revise his own opinion, not to his successor, who never gave an opinion.   The course here pursued tends to produce conflicting opinions, and disturb judicial courtesy.   The practice in chancery to set aside a final decree in the same court upon the same facts on which it was made, is an anomaly in the judicial system ; it protracts a final decision, enhances the expense to suitors, and may become very oppressive : it is submitted, that it ought never to be indulged to a successor, to set aside, upon the merits, the final decree of his predecessor.

*P. A. Jay*, and *T. A. Emmet*, contra.   A rehearing is a right to which the suitors in chancery are entitled, and of which they cannot be devested by a change of the chancellor.

The utmost that the respondent engaged to do was to give the appellants *the preference* to purchase or take leases of the land, which, in other terms, was nothing more than that when the respondent should be able and chose to dispose of it, at such price and on such conditions as he should think proper to impose, the appellants should have the refusal : he never pro-

IN ERROR.
........
ALBANY,
April, 1816.

PARKHURST
v.
VAN CORTLAND.

mised to convey it to them. But, admitting that a deed or lease were promised, this is not such an agreement as a court of chancery can carry into execution. An action could not be sustained upon it at law. In general, a party having an agreement, has an election either to come into chancery, or bring an action, but there is no case in which a specific performance has been decreed of an agreement, not so certain as to sustain an action at law.* The agreement in this case is so uncertain that no performance of it can be decreed.† Before chancery will execute an agreement, it is always necessary that the terms should be clear.‡ It must be complete and perfect; and whenever there is a demand in law or equity, there must be a certainty of the thing demanded to be adjudged or decreed, or at least a mean to reduce it to a certainty.§ And, where one possessed of land for a term of 2000 years, granted it to another without mentioning any term, it was held void for uncertainty.‖ In *Gordon v. Trevelyan*,** there was a negotiation between the defendant and the plaintiff who held a farm of the defendant at an annual rent, by letter, for a lease : the plaintiff proposed a lease on the *same plan* with those *usually* granted to the other tenants of the defendant, and the defendant agreed to give him a lease in the *usual* way; no lease was ever given, and the plaintiff continued in possession 10 or 12 years after this negotiation, when the defendant gave him notice to quit, in consequence of which the plaintiff filed a bill for an injunction, which was dissolved, on motion of the defendant. *Thompson*, Ch. B. says, " it seems to me, that to constitute an agreement for a lease, the term and conditions should either be actually expressed, or the treaty should bear some reference by which they might be ascertained, and that otherwise it is not an agreement of which a court of equity can decree a specific performance ;" and *Richards*, B. says, " It is impossible for a court of equity to decree a specific performance of an agreement for a lease, without having a precise term, expressly, or by reference, for which it is to be granted." It has been endeavoured to help out the vagueness of this memorandum with parol proof. To add to an agreement in writing, by permitting parol evidence of what will affect land, is against the statute, and against the rule of common law prior to it.†† " If the agreement, " says *Buller*, J.‡‡

* 1 *Ves.* jun 326.
† 2 *Vern.* 415. 1 *Ves.* 279. 1 *Sch.* & *Lefroy*, 22. 2 *Sch. & Lefroy*, 1. 551 *Newl. on Cont* 169 *Prec. in Ch.* 560. 12 *Ves.* 466.
‡ 3 *Ves.* 419. 420.
§ *Tr. of Eq.* b. 1. c. 3. s. 6, 7.
‖ 2 *Vern.* 684.
** *Price's Ex. Rep.* 64.

†† *Com. Dig. Ch.* (2 c. 4.) *Peake's Ev.* 116. 2 *Atk.* *Bro. Ch. Cas.* 82.

383. *Burr.* 65. 1 *Ves.* jun. 241. 402. 7 *Ves.* 133. 2 *Vern.* 339. *Skin.* 54. 3 *Wils.* 275. 1
2 *Bro. Ch. Cas.* 219. 4 *Bro. Ch. Cas.* 477. 514. 1 *Sch. & Lefroy*, 22. ‡‡ 1 *Ves.* jun 333.

IN ERROR.
......
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND,

\* 2 *Vern.* 619.

† 2 *Caines' Rep.*
155.   1 *Johns.*
*Rep.* 414. 5 *Vin.*
*Abr.* 515. *pl.* 18.
517. *pl.* 26.   1
26   1 *Bro. Ch.*
*Rep.* 92.

‡ 3 *Bro. Ch. Rep.*
149.

§ 1 *Sch.* & *Le-*
*froy*, 37.

‖ 6 *Ves.* 37.

\*\* 2 *Vern.* 415.
1 *Sch* & *Lefroy*,
13   20.   22.
1 *Ves.* 279.
2 *Sch* & *Lefroy*,
1. 554.

†† *Rob. on*
*Frauds*, 140.
*Amb.* 586.   3
*Atk.* 4.
‡‡ 1 *Bro. Ch.*
*Rep* 412. 7 *Ves.*
341. 346.
‖‖ 2 *Bro. C^h.*
*Rep.* 561.

" is certain, and explained in writing signed by the parties, that binds them : if not, and evidence is necessary to prove what the terms were, to admit it would effectually break in upon the statute, and introduce all the mischief, inconvenience, and uncertainty, the statute was designed to prevent." Agreements within the statute are not to be part in parol and part in writing.\* And where an agreement is reduced to writing all parol communications in respect of the subject are merged in it.† But the parol evidence does not supply the uncertainty of the memorandum; it ascertains neither the term nor the rent. To go into transactions between other parties, in relation to other lands, and inquire into the rate at which lands were leased in the patent, would be a very strange way of determining an agreement for these parties. In *Allen* v. *Bower*,‡ there was a fixed agreement, a certain, clear bargain ; but the soundness of that decision has since been questioned.§   In the present case, there was an alternative, either to sell or lease ; but who was to have the election ? It certainly does not appear that the appellants had the choice, but on the contrary, the respondent ; and as to the time or amount of payment, nothing is settled. Had the agreement stated by the appellants in their bill been admitted by the respondant, to the fullest extent, in his answer, yet, as he insisted on the benefit of the statute of frauds, a specific performance could not be decreed.‖

The agreement was not mutual ;\*\* the appellants were not bound to take the land at any price ; they were bound to nothing ; but, according to the appellants' counsel, the respondent was bound to every thing.

Two acts of part performance are alleged as taking the present case out of the statute : the admission of the appellants into possession of the land, and their expenditure of money. The general principle with regard to what shall constitute a part performance is, that the acts must be done with a direct view to perform the agreement, and tend inceptively towards its accomplishment, and must, also, be in prejudice of the party performing them.†† An act merely introductory, or ancillary, to the agreement, though attended with expense, has never been held a part performance.‡‡ It must be something done as owner of the estate, and which the party would not have done had he not considered himself in that light.‖‖ This last position, although laid down by counsel, *arguendo*, is cited with ap-

probation by Mr. *Roberts*.* Here, possession was never given by the respondent, but was taken by the appellants previous to any agreement; it, therefore, could not have been an act tending to a completion of an agreement; it could not have been done by the appellants as owners of the estate, and the case shows that they never considered themselves as owners. Such previous act is not sufficient to entitle to a specific performance of a subsequent promise; for the promise is itself a *nudum pactum*.* And besides, possession taken in pursuance of an alleged agreement is not a part performance, unless it clearly appear what the agreement was.† The same answers will apply to the other part performance set up by the appellants. The case shows that they commenced their improvements, and made their expenditures, before they obtained any memorandum from the respondent; they were made without his consent, were no consideration for a promise, and no agreement has been made out, other than the memorandum, of which they could be a performance. There being no agreement, then, as has been shown, which was binding on the respondent, " the circumstance," as is said by the chancellor, in *Robertson* v. *St. John*,§ " of laying out money afterwards, as it was voluntary, could not vary the nature of the case." By the agreement, admitting that there was one, the appellants were to be allowed to possess the land; they have had the lawful possession in conformity to it; their acts may all be referred to it, and on that ground, proof of any further agreement is inadmissible.§

The appellants allege that a fraud has been practised upon them, and assign that as a ground of relief. Equity only relieves against fraud where the person, executing a written instrument, has, by art, misrepresentation, or deception, been induced to insert, or omit, stipulations different from what would otherwise have been his intention : in such case, parol evidence is admissible to make out the true state of the contract, and in no other.** But here the appellants are bound by no contract, and, consequently, have been surprised into no act from which they can seek relief. They, as plaintiffs, endeavour by parol proof to enlarge the operation of a license executed by another, fairly made, received by them without objection, and of the infirmity of which they must have been aware, (indeed, they have acknowledged themselves to lie at the mercy of the respondent,) and take advantage of an exception to the statute of

*IN ERROR*

ALBANY,
April, 1816

PARKHURST
v.
VAN CORTLAND

* *On Frauds*, 141. n.

† 2 *Bro. Ch. Rep.* 140.

‡ 6 *Ves.* 470.

§ 2 *Bro. Ch. Rep.* 140.

‖ 2 *Sch. & Le-froy*, 8.

** *Rob. on Frauds*, 79.

IN ERROR.
••••••
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.
* 7 Ves. 346.

frauds intended for the benefit of those who oppose the execution of an instrument fraudulently obtained. It is said that the ground upon which the court acts in decreeing the execution of an agreement, is fraud in refusing to perform, after part performance by the other party ;* but it has already been shown that there was no part performance, and thus the allegation of constructive fraud has been repelled. There was no agreement that the appellants should expend money upon the land, but they did it voluntarily. When they made improvements they did not do it as owners, nor had they any reason to believe, from the agreement that they certainly would be owners. What proof is there of actual fraud? That is a question purely of intention, and what deceptive intention has been brought home to the respondent? What is to become of the statute, if the mere fact of making a promise which it declares void is to raise a legal presumption of fraud to take the case out of the statute? The appellants have been allowed by the chancellor all that they were, in equity, entitled to. Had they gone on the land, after the express consent of the owners, as lessees for a definite term, and then erected buildings and made improvements, at the expiration of the term they could have recovered nothing against their landlord for their improvements. But being mere tenants at will, they have been allowed the value of their improvements. The respondent promised that no advantage should be taken of their labour: the chancellor has given them the benefit of that promise ; further than that he could not go; for, to decree them a conveyance on the parol promise to give a title, or on the defective, uncertain memorandum set forth in the case, would be to repeal the statute of frauds.

The chancellor has pursued the only proper course. In *Fos-ter* v. *Hale,†* the master of the rolls says, " the court has gone rather too far in permitting part performance, and other circumstances, to take cases out of the statute, and then, unavoidably, perhaps, after establishing the agreement, to admit parol evidence of the contents of that agreement. As to part performance, it might be evidence of some agreement, but of what, must be left to parol evidence. I always thought the court went a great way. They ought not to have held it evidence of an unknown agreement, but to have had the money laid out repaid. It ought to have been compensation. Those cases are very dissatisfactory. It was right to say, the statute should not

† 3 Ves. 712.

be an engine of fraud, therefore, compensation would have been very proper." A court of equity will refuse to interfere where, from the nature of the case, the damages will necessarily be commensurate to the injury sustained.*

The inclination of courts of equity now is, to extend no further the exceptions which have been made to the statute of frauds, and it has often been regretted that it is already so much broken in upon. The observations of Lord *Redesdale*, in *Lindsay* v. *Lynch*,† are very pointed to that effect. " I am not disposed," he says, " to carry the cases which have been determined, on the statute of frauds, any farther than I am compelled by former decisions. That statute was made for the purpose of preventing perjuries and frauds, and nothing can be more manifest, to persons who have been in the habit of practising in courts of equity, than that the relaxation of that statute has been a ground of much perjury, and much fraud. If the statute had been rigorously observed, the result would, probably, have been, that few instances of parol agreements would have occurred; agreements would, from the necessity of the case, have been reduced to writing, whereas, it is manifest that the decisions on the subject have opened a new door to fraud; and, that under pretence of part execution, if possession is had in any way whatever, means are frequently found to put a court of equity in such a situation that, without departing from its rules, it feels itself obliged to break through the statute. And I remember it was mentioned in one case, as a common expression at the bar, that it had become a practice " to improve gentlemen out of their estates. It is, therefore, absolutely necessary for courts of equity to make a stand, and not carry the decisions further." The same opinion has been entertained by a distinguished judge in this country. In *Grant* v. *Naylor*,‡ *Marshal*, Ch. J., observes, " Already have so many cases been taken out of the statute of frauds, which seem to be within its letter, that it may well be doubted whether the exceptions do not let in many of the mischiefs against which the rule was intended to guard. The best judges in England have been of opinion that this relaxing construction of the statute ought not to be extended further than it has already been carried, and this court entirely concurs in that opinion." The reasons on which part performance has been held to take a case out of the statute are examined, and their inconclusiveness fully exposed by Mr.

*IN ERROR.*

......

ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

* 2 *Sch.* & *Lefroy*, 553.

† 2 *Sch.* & *Lefroy*, 5.

‡ 4 *Cranch.* 235.

IN ERROR
......
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.
* On Frauds,
133.  135,  136,
137.

*Roberts.** If the law lays down certain conditions on which it stipulates to lend its aid, the party neglecting to observe those conditions, has no right to complain that the law will not assist him. " On the other hand," says that author, " the public may have a better right to complain, if by the variable application of a law, useful only as long as it is uniform, men are encouraged to hazard the consequence of neglecting it." He shows that the reasoning, in such cases, moves in a circle; it assumes the existence of the agreement from the part performance, and then applies the part performance to the agreement, so as to make out the acts of performance to have been done in pursuance of it. The gentleman on the other side has cited, in support of his positions, this writer† who has exerted himself so successfully to expose their futility : but it was only by omitting the most essential part of a paragraph that he was able to distort it to his purpose.

† *Id.* 135.

What was the intention of the statute? To prevent fraud and perjury, by requiring certain agreements to be in writing. Its object, like that of all other laws, is of a general and public nature : it was not designed for the benefit of the individual availing himself of it, but for the benefit of the community. It is in vain to say, that it is here unconscientious to rely upon the statute ; a thousand defences equally unconscientious are admitted, every day, in courts of justice, because, their admission being judged necessary for the general quiet and security, a private injury is not suffered to outweigh a public inconvenience. A party may often shelter himself from the performance of his duty, under a law designed as a protection against fraud and injustice ; but if he can bring himself within its purview, no court can examine into the purity of his motives : the inquiry is precluded by the all-controuling principle of universal expedience.

*Williams,* in reply. It is a principle clearly established, both by English and American authorities, that where there is a contract not clearly put in writing, but which can be explained by accidental circumstances, the court will decree a specific performance. The authorities are conclusive that a part performance will take a parol agreement out of the statute ;‡ still more, in the case of a written agreement capable of being‖ made good by extrinsic circumstances. The ground of relief in all

‡ 1 *Ves.* jun. 333.
2  *Caines'  Cas.*
108, 109.  2 *Sch.*
& *Lefroy,*  549.
Sugd.   Law   of
*Vend* 83.  2 *Atk.*
83.
‖ 3 *Bro Ch. Rep.*
149.

such cases is fraud ;* and it is hardly possible to conceive a more flagrant instance of fraud than has been practised by the respondent on the appellants. The case of *Grant* v. *Naylor* cited on the other side, was not a case of specific performance, but of latent ambiguity, and is therefore inapplicable. In *Forster* v. *Hale*, the decision of the master of the rolls goes to prove that the principle which he adopts as law, is contrary to all former law and authority. In Lord *Walpole* v. Lord *Orford*,† also cited on the other side, the real doubt was, that the agreement did not appear to have been intended to be legally binding, but was, in fact, designed by the parties to be merely honorary.

IN ERROR.
......
ALBANY,
April, 1816.

PARKHURST
v
VAN CORTLAND.
* Rob on Frauds.
123—132.

† 3 *Ves.* 419.

THOMPSON, Ch. J. It was not pretended upon the argument, that this was a case coming within the statute of frauds, or that any note, or memorandum in writing, was necessary for the purpose of making out a valid and binding contract between the parties. The appellants, in the court of chancery, bottomed their claim to relief upon *a part performance* of an agreement alleged, by them, to have been made with the respondent, in relation to the lands in question. If any authority was necessary to show that such cases are not within the statute of frauds, we have it in the case of *Brodie* v. *St. Paul*. (1 *Ves.* jun. 333.,) where *Buller*, J., sitting for the lord chancellor, lays it down as a *settled rule in equity*, that part performance of a parol agreement takes it out of the statute of frauds. The object of the bill, in the case now before us, was a specific performance of an agreement. This necessarily presupposes the existence of such agreement, and the bill, therefore, as it must, in all cases of this description, sets out what that agreement was. It, accordingly, became necessary for the appellants to prove the agreement with all requisite certainty, or to furnish such evidence as to warrant the court in presuming the agreement which they claimed to be in force. In *Forster* v. *Hale*, (3 *Ves.* jun., 712.,) the lord chancellor observed, that he thought courts had gone too far in admitting part performance, and other circumstances, to take cases out of the statute of frauds. Part performance, said he, might be evidence of some agreement, but of what, must be left to parol proof. It would, he thought, have been better, in such cases, to have the money laid out, or repaid, than to consider part performance evi-

IN ERROR.
......
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

dence of an unknown agreement. Here is a full recognition of the principle, that from the fact of part performance an agreement may be presumed. And the same lord chancellor, in another case, (3 *Ves.* jun. 320.,) observes, that the fact of some agreement may be implied from circumstances. If, then, from the fact of part performance, we are authorized to presume some agreement between those parties, in relation to the land, what that agreement was may be collected, with all reasonable certainty, from the parol proof.

I agree fully with the reasoning of the chancellor upon the insufficiency of the memorandum of April 1797, to ascertain and define the terms and nature of any contract. It is too vague and indefinite for that purpose ; nor, according to my understanding of it, was it ever intended for any such purpose. There is nothing in it which looks like fixing, or defining, a bargain as to the *purchase* or *leasing* of the lands. It purports only to give permission to the appellants to *possess* the lands subject to some future arrangement, as to the purchasing or leasing the same ; they, however, by such possession, gaining a preference, or what is usually called a *refusal*, of such bargain. If the appellant's claim, therefore, rested upon this memorandum alone, as the evidence of the contract, I should have no hesitation in saying it could not be supported.

Nor is it to be disputed, that where it is necessary to make out a contract in writing, no parol evidence can be admitted to supply any defects in the writing. It is a sound and salutary rule, that a contract cannot rest partly in writing and partly in parol ; but the case before us is not one falling within either of these rules. It was not necessary that the contract should be in writing ; nor does it require that the memorandum in writing should be connected with the parol proof, for the purpose of making out the contract. If my construction of the memorandum is right, it does not profess to make any part of the agreement for the purchase or leasing of the premises. The principal object was, to show that the possession was taken with the assent of the owner of the land, and that the appellants were not intruders. That is all the purpose for which it is necessary to use this memorandum ; and if this permission had been given by parol, it would have been of equal force with the written memorandum. But if this memorandum is nugatory and void, for uncertainty, we may surely reject it altogether, and rest en-

IN ERROR.
......
ALBANY,
April, 1816.
PARKHURST
v.
VANCORTLAND.

tirely upon the parol proof, as it is a case where no writing was necessary. There are not, however, wanting the opinions of very able chancellors in support of the position, and it is, per-haps, the better opinion, that where part performance is made the basis of the claim for a specific execution of an agreement, parol proof may be connected with written evidence for the purpose of making out the contract.

The case of *Allen* v. *Bower*, (3 *Bro. Ch.* 149,) is directly in point on this question. That was a bill for specific perform-ance, and the evidence to establish the agreement was partly written and partly oral. The written promise of a lease was imperfect, and parol evidence was admitted, by direction of Lord *Thurlow*, (after it had been rejected by a master,) to sup-ply the defects in the writing. Lord *Redesdale*, in commenting upon this case, and particularly upon the question, whether a defective writing can be supplied by parol, observes, that this cannot be done, when the writing is set up as the *sole founda-tion* of the agreement, nor unless it be a case of part perform-ance. (1 *Sch.* & *Lef.* 37.) It is fairly to be collected from his opinion, that in such cases, parol and written evidence may be let in, to make out the contract.

But laying aside the written memorandum altogether, let us examine the proofs in the case, and see whether an agreement for a deed or a durable lease is not satisfactorily made out : and it ought here to be noticed, that the bill in chancery seems to be framed upon an agreement distinct and independent of the memorandum. We have not the bill set out at large in the case, but according to the statement given, it appears, that after setting out the memorandum, the bill alleges, that afterwards, that is, after the giving of the memorandum, the respondent, for the *further security* of the appellants, and to induce them to make permanent improvements, *agreed*, that in case of the sale of the land, under such agreement, (referring to the memoran-dum,) the price should be the actual value at the time of the agreement, superadding interest up to the time of the convey-ance ; and, in case of a lease, the same should be durable, or, in other words, a lease in fee, at the usual and customary rents of the country. This agreement, or any other than what is con-tained in the memorandum, the respondent denied in his an-swer in chancery. A recurrence to the evidence becomes ne-cessary, then, to see how far it will support the alleged agree-

*IN ERROR.*
........
ALBANY,
April, 1816.

PARKHURST
*v.*
VANCORTLAND.
ment. The memorandum authorizing the appellants to take possession is dated in the year 1797 ; but it appears they had been in possession from the spring of 1794, under an assignment of a similar memorandum, which had been given by the respondent, to *Benjamin Lawrence.* This assignment was known to the respondent in the fall of the year 1794, and he recognised the appellants, as standing in the place of *Lawrence.* The memorandum given in 1797 was a mere substitute for the other, and must have a retrospective effect, so as to sanction and make valid every thing done by the appellants, after they came into possession under the assignment from *Lawrence.* About this time it appears that the appellants became uneasy with respect to their situation, and by their agent applied to the respondent to give them more satisfactory or better security. To this, according to the testimony of *Lawrence,* the respondent replied, that he would give them a good title, as soon as he could obtain a release from Mr. *Clark's* heirs ; either by a durable lease, on good terms, or a sale of the lot to them, as they chose. The agent preferred a lease ; but still urged to the respondent, that the appellants hesitated about erecting a barn and other buildings, on account of the security for the land not being satisfactory. The respondent replied, that they might go on, *build, and occupy the lot, as if it were their own,* and no advantage should be taken of their labour ; that they should have the lot as wild land was going in the country, at the time he should be able to give a title. This witness further proves, that in the year 1797, when, what he calls the former *permit* to *Lawrence* was surrendered up, and one given to the appellants themselves, the respondent again *renewed his engagement, to sell or lease the land to the appellants,* upon the terms before mentioned ; and told them they might go on and erect buildings, and make valuable improvements as if the land was their own. The same thing, substantially, was reiterated, over and over again, to divers witnesses, and at various times, down to a period as late as the year 1803. The appellants were continually expressing their fears and apprehensions, about making improvements, on account of the insecurity of their title ; and these fears and apprehensions were allayed by assurances that a title would be given as soon as partition could be made with *Clark's* heirs. The respondent, at all times, declared that the want of this was the only impediment to his giving a deed or

*IN ERROR.*
.....
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

lease; and he uniformly directs the appellants to go on, make improvements, use and occupy the land as their own, and that no advantage should be taken of them. The appellants, confiding in these assurances, have continued to make improvements, and expend their money to an extent which, to them, is a pretty serious amount. Can it be possible, that all this, after such a lapse of time, furnishes no evidence of an agreement, either to sell or lease the land to the appellants? To my mind, it affords the most conclusive and satisfactory evidence of such agreement. The use that is now attempted to be made of the short lease of 1803, to rebut the inference to be drawn from this testimony, opens a door to many animadversions that would not, to say the least of them, be very favourable to the respondent. I shall dismiss it, however, with barely adverting to the testimony of *Simeon Parkhurst*, who swears, that before this lease was taken, assurances were made, both by the respondent and his agent, that such lease should not, in any degree, injure. the appellants, or affect their contract, but that they should have a lease or a deed, according to the former promise. After such assurances, this lease must be entirely put out of view.

Such being the leading facts with respect to the agreement, and the circumstances under which the appellants have continued to occupy the lands from the year 1794, and the encouragement held out to them, from time to time, to make improvements; let us apply the law to this case, and see the light in which such cases have been viewed by courts of equity.

I do not think it necessary to take up the time of the court in travelling through the numerous reported cases on the subject. The substance of them, so far as is necessary to be noticed on the present occasion, is summed up, by Mr. *Roberts*, in his valuable Treatise *on Frauds*. " the relief," says he, (p. 131.,) " against the statute, in these cases, of part performance, was originally founded on the fraud and deceit, usually characterising the circumstances. There is no satisfactory foundation for the doctrine of part performance, without the intermixture of fraud; (p. 132.;) and, upon this ground, where an owner of land has encouraged another to go on with his improvements upon the estate, under a false expectation of a conveyance, or a lease, and this expectation raised in him by the assurances of such owner, it is agreeable to the general course of equitable relief, to disappoint the contrivance, by compelling the deceiver

*IN ERROR.*

*ALBANY,*
*April, 1816.*

*PARKHURST*
*v.*
*VANCORTLAND.*

to realize the expectation he has created ;" that is, by compelling him to give such deed, or lease. " This protecting jurisdiction," he says, " has stretched itself to those cases where the illusory hope has been raised, not only by *words and assurances*, but simply *by looking on in silence*, whilst false impressions which we are able either to correct or verify, are inducing a fruitless expenditure on improvements. This equity is strong and salutary, and the jealousy of jurisdiction has shut out the statute of frauds where this principle of relief applies." Again, he says, (p. 134.,) " these instances of encouragement, either tacit or express, to make improvements, incur expense, &c. are not proper cases of part performance, but of actual fraud, which courts of equity have always been forward to relieve against." " *And the court will supply an agreement* out of fraudulent suppressions, as well as misrepresentations, of the party deceiving, who is considered as virtually agreeing to make good the expectation he has raised."

These are rules and principles flowing from the soundest morality, and sanctioned by the most weighty considerations of justice and equity, and are directly in point to the case before us. The testimony is strong and irresistible, to show that the respondent, from time to time, encouraged the appellants to go on and make improvements, not only under an expectation, but reiterated promises, that when he had made a division with, or obtained a release from, the heirs of *Clark*, he would give them a deed, or durable lease.

The decree, in the court of chancery admits, that the appellants are entitled to relief, but that compensation for their improvements would be more fit and proper than a specific performance. Lord *Redesdale*, who thinks (2 *Sch. & Lef.*, 552.) courts of equity have gone far enough, if not too far, in decreeing specific performance of agreements, says, the original foundation of such decrees was, that damages at law would not give the party the compensation to which he was entitled; that is, would not put him in a situation as beneficial to him as if the agreement was specifically performed. And, on this ground, he says, the court of chancery, in a variety of cases, has refused to interfere, where, from the nature of the case, the damages must, necessarily, be commensurate to the injury sustained; but the cases, (*Davis* v. *Thorne*, 2 *Sch. & Lefroy*, 347.,) in which the court decrees specific performance of contracts are generally

IN ERROR.
........
ALBANY
April, 1816.

PARKHURST
v.
VAN CORTLAND

those where damages would not answer the intention of the parties in making the contract, and a specific performance is, therefore, essential to justice. Is not the case before us one of that description? Would it be as beneficial to the appellants to be paid for their improvements as to have a specific performance? Would compensation answer the intention of the parties in making the contract? Would they have gone into the wilderness, and spent the prime of their lives in clearing up a farm, and providing themselves with comfortable dwellings, under an expectation of being dispossessed, on barely receiving a compensation for their improvements? The earnest solicitude expressed by them, on a variety of occasions, with respect to further security of their title, and the repeated applications to the respondents for this purpose, show, beyond the possibility of a doubt, that their intention was to procure for themselves a permanent settlement. Such cannot be a case for compensation. A specific performance is, in the language of Lord *Redesdale, essential to justice.* Who is to reap the benefit of the appreciation of the lands, they who have encountered the hardships and privations of a new country, and whose labour must, in a great measure, have produced this appreciation, or he who has kept them under the delusive expectation of a title until the farm is subdued, and now seeks to deprive them of it? The answer is obvious.

No reasonable objection can be made to a specific execution, on account of any uncertainty in the agreement. The proof makes out a parol contract with all requisite certainty; to wit, either to sell the land as wild land was selling in that part of the country, in the year 1797, together with the interest, or to give a durable lease in fee, at the customary rent at that time, at the election of the appellants. In the case of *Shannon* v. *Bradstreet,* (1 *Sch. & Lefroy,* 73.) Lord *Redesdale,* in answer to an objection as to the uncertainty of rent to be reserved, pursuant to an agreement, said he did not think it uncertain, for it was capable of being reduced to certainty. Every executory contract must contain this species of uncertainty; but if it contains all that leads to future certainty it is sufficient. If this rule be sound, the price or rent of the land can be easily ascertained by a reference to a master. I am, accordingly, of opinion, that this is a fit and proper case for a specific performance, and that the decree of the court of Chancery ought to be reversed.

*IN ERROR:*
.......
ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

SPENCER, J., was of the same opinion.

YATES, J., and PLATT, J., were absent.

VAN NESS, J., was of opinion that the decree of the court of chancery ought to be affirmed.

BATES, BICKNELL, BLOOM, CLARK, CROSBY, DAYTON, ELMENDORF, HAGER, LOOMIS, KEYES, LIVINGSTON, ROSS, STRANAHAN, SWIFT, and VER BRYCK, Senators, concurred in the opinion delivered by the chief justice.

*Van Vechten,* Senator. The appellants have filed their bill in the court of chancery, to obtain a specific performance of an agreement for the title to land in the *Oriskany* Patent, which belongs to the respondent.

The respondent, by his answer, denies the agreement, and insists upon the statute of frauds, against any parol agreement which might be proved.

From the bill, as well as the testimony in the cause, it appears that the appellants rely partly on an agreement by parol, and partly in writing.

(Here he stated the memorandum, and the evidence of the witnesses.)

I shall consider the case as it stands—1. Upon the written instrument; and, 2. Upon the parol evidence.

1. What does the written instrument import? Does it amount to a final bargain for the land in question upon any specific terms, of which this court can decree the performance?

According to my understanding of its plain language, it is a mere permission for the appellants to occupy the land, with a promise to give them the first offer to purchase or take a lease of it, when the respondent's title in severalty should be perfected; but it does not profess to fix either the terms of sale, or of the lease. Can this court execute such an instrument specifically, by decreeing either a conveyance in fee, or a lease? I presume not. A decree for a specific performance must operate upon, and according to, the terms of the agreement; and, therefore, if the instrument contains no specific terms it is not susceptible of specific execution. The office of enforcing performance can not be exercised when the matters to be per-

formed are left unsettled and uncertain, by the parties to an *IN ERROR.*
• • • • • •
**ALBANY,**
April, 1816
PARKHURST
v.
VANCORTLAND.
agreement.

Suppose the court decrees a conveyance, what *price,* according to the instrument, are the appellants to pay ? From what time are the payments to commence ? Are they to be with or without interest ? or is the consideration to be paid at the delivery of the deed ; and in that case, what is the respondent to receive for the use and occupation of the land since 1794, when the appellants took possession ? or is he to receive no remuneration for upwards of twenty years' enjoyment of his land, and to be compelled to part with the title at the present appraised value thereof, considering it as in a wild state ? Have the parties agreed, by the instrument before us, to this mode of fixing the price, and by whom it is to be done ? The instrument is totally silent upon all these points. Let me ask, then, what are to be the terms of a decree for a deed, according to the stipulations of the parties as expressed in their written agreement ?

Again ; should the court decree a lease, for what term is it to be ; what is to be the annual rent ; how, and when payable, and from what time is it to commence ? What covenants and conditions are to be inserted in it? for the written instrument is silent as to all these particulars. Will a decree, bottomed upon this instrument, either for a conveyance in fee, or a lease upon such terms as the court shall direct, comport with the legal meaning of a specific execution of an agreement made and settled between the parties? In my opinion it will be repugnant to all established principles, (*Roberts on Frauds,* 135, 136.,) relative to specific performance ; and that, in order to make such a decree, the court must first assume the office of bargainors for the parties, to lay the foundation for it.

It can hardly be necessary for me to detain the court by citing authorities on this point. I shall, therefore, mention only a few of the numerous cases to be found in the books in support of my positions.

In *Blagden* v. *Bradbear,* (12 *Ves.* jun. 466.,) the master of the rolls held, that to sustain a bill for specific performance of an agreement for the purchase of land, the agreement must express the price, or, by reference to something else, must show what it was. In *Clinan* v. *Cooke,* (1 *Sch. & Lefroy,* 22.,) the lord chancellor held that a bill for specific performance of a

*IN ERROR.*
••••••
ALBANY,
April, 1816.
PARKHURST
v.
VANCORTLAND.

written agreement for a lease for three lives, could not be sustained, because the agreement did not mention the term, and did not refer to an advertisement of the defendant, offering to lease the land for three lives.   So, in *Clarke* v. *Wright*, ( 1 *Atk.* 12.,) Lord *Hardwicke* declared the omission of the price in a letter, acknowledging a contract for the sale of land, to be fatal.

2. Is the parol evidence competent to explain and supply the defects of the written instrument ?

By the statute of frauds, all contracts concerning the title to lands, which are not reduced to writing, and signed by the parties, are declared to be invalid.   The wise provisions of this statute would be wholly defeated, if parol evidence was admissible to enlarge and support a defective written agreement. But I need not dwell upon this point here.   This court has recently decided,  that in the case (*Mann* v.  *Mann*,*) even of a will, a patent ambiguity renders it void, and that parol evidence, to explain the intent of the testator, cannot be let in to establish it.   If the law is so, in relation to wills, which are entitled to the greatest benignity, the reasons upon which it is founded, apply with greater force to a case like the present.

*Ante, p. 1.*

But admitting, for argument's sake, that the parol evidence is competent, what does it prove ? According to my understanding, nothing more than that the respondent, in conversing about his *Oriskany land*, has repeatedly declared that it was his intention, when his title was completed, to sell, or lease it not only to the appellants but to all the occupants thereof, as wild lands were going ; and that he would take no advantage of their labour by enhancing his terms.   I cannot collect from this evidence, that he intended, by such conversations, to make a final bargain relative to the terms of sale, or the conditions of a lease, or to give any assurance with respect to those terms or conditions, except that he did not mean to avail himself of the occupant's labour.   How then does the parol evidence ascertain the price to be paid for the land, or the terms of payment in case of a sale, or the terms and condition of the lease if he should conclude to let it ?   Indeed, the appellant's principal witnesses, *Lawrence* and *S. Parkhurst*, differ essentially as to the price spoken of   The former says, it was *as wild land was going, when the respondent should be enabled to give a good title ;* the latter testifies that it was *the price at which the land was*

*going, when he should give the title, or the price it was selling for at the time of the conversation in April, 1797, with the addition of interest from that time.*

There is, however, another decisive objection to this evidence. The conversations to which it relates were prior to, or at the time when the written permission of 1793 to *Lawrence* was surrendered by *S. Parkhurst,* and he accepted the instrument of *April,* 1797, in lieu of it. The surrender was made, as *Parkhurst* deposes, to obtain a *new contract.* Why? Can any other reason be imagined, except that he wanted a fuller and more satisfactory engagement from the respondent? Did he receive such an one? No—why? Because the respondent declined to give it. Was there any deception used to impose the instrument of 1797 upon *S. Parkhurst?* He does not allege that there was. Does he pretend that he did not understand its import? No—for he had, in the fall of 1794, informed the respondents that the appellants wished for better security than the instrument of 1793, which was of the same tenor. What then is the fair inference from this transaction? Is it not, that the instrument of 1797 was the fullest which the respondent would give, and that the appellants' agent accepted it understandingly? I, therefore, consider all the previous parol conversations, testified to by the appellants' witnesses, as merged in this instrument. And if they are, it results, conclusively, that the parol evidence can not aid the appellants.

If I understood the appellants' counsel correctly, he disclaimed to rely upon part performance as ground for their relief in this case. It cannot, therefore, be necessary to consider that point; but if it was, the objection of total uncertainty in the alleged agreement would be decisive against the appellants. For, though part performance will, in certain cases, induce a court of equity to enforce a parol agreement for the purchase of land, it cannot make an agreement susceptible of specific execution, when its terms are not specifically ascertained nor ascertainable.

But it was strongly urged, in argument, that the appellants are entitled to relief on the ground of fraud, because they were led on by the false verbal assurances of the respondent to make valuable permanent improvements on the land. In order to try the strength of this position, it must be examined with reference to the appellants' bill, and the facts in the case,

IN ERROR.
......

ALBANY,
April, 1816.

PARKHURST
v.
VANCORTLAND.

The scope and prayer of the bill are for the specific performance of an agreement. It sets forth the instrument of 1797 as the written contract relied on, and refers all the respondent's verbal assurances to it; but does not contain a single allegation of fraud other than what is implied by the charge of the respondent's refusal to fulfil his contract? What, then, is the question of fraud arising upon the appellants' bill? None other than what the law can imply in every case of a bill for specific performance. I have already shown that in such cases the decision must turn upon the validity and sufficiency of the agreement set forth and proved. But I will here add, that to entitle a party to relief upon the ground of fraud, the fraud must be specifically and expressly charged, and put in issue.

This point has been determined by this court in *M'Kernon* v. *James*, (6 *Johns. Rep.* 560, 561. 564, 565.) in which the present chancellor and Mr. Justice *Spencer* delivered the opinion of the court. The same rule is laid down in the *English* books. (*Mitf. Pl.* 19. 255. *Gilb. For. Romanum*, 218. *Clarke* v. *Turton*, 11 *Ves.* jun., 240. *Johnson* v. *Child*, 1 *Bro. C. C.* 94.)

Again; should this be considered a case of fraud, it may be asked, what relief are the appellants to have? Will this court decree the land to them without price? Would not such a decree go beyond their claim, and travel out of the case presented by their bill? Or will the court undertake to establish the price and the terms of payment, or the terms and conditions of a lease to be given by the respondent? If it will, it must do so arbitrarily, and without a guide, or it must recur to the agreement set up by the appellants. The first would violate all the settled principles of justice and equity, and the latter brings us back to the question, whether the agreement stated by the appellants has been duly proved, and can be specifically executed here.

I am aware that there are cases in the books in which it is laid down that a party's right shall be concluded by his fraudulent acts. But those are cases widely different from the present. For the purpose of illustration, I will mention a few of them, and state the principles on which they are decided.

Where a man who has a title to land, and knows of it, stands by, and either encourages, or does not forbid, the purchase from another, he, and all claiming under him, shall be bound by such purchase. (1 *Fonbl. Eq.* 161. *Rob. on Frauds*, 130.) For he imposed a false apprehension upon the purchaser by his si-

lence, when silence was treacherously expressive. So, where
A. encourages a person to take a long lease from a tenant for
life, to whom A. stands next in remainder, and to build and
make improvements, and the tenant for life dies before the lease
is out, a court of equity will not suffer A. to disturb the lessee
until the expiration of his lease. (*Hanning* v. *Ferrers*, 1 *Abr.
Equ. Cas.*, 375.) Because, to use the language adopted by his
honour, Ch J. *Thompson*, in *Nevin* v. *Belknap*, (2 *Johns. Rep.*,
589.,) where a man has been silent, when, in conscience, he
ought to have spoken, equity will debar him from speaking
when conscience requires him to be silent.

Again; in the same case, when speaking of a purchaser taking
possession, and making improvements under the circumstances
above mentioned, his honour says that, to make those acts
available to him, they must be done as owner of the estate,
and which he would not have done had he not considered
himself in that light.

Hence it will be seen, that the class of cases in which fraud
will devest, or suspend, a man's title, differ totally from the
case now before us. Here the appellants avow that they en-
tered and made their improvements upon the faith of an agree-
ment, by which they acknowledge the title to the land to be in
the respondent. There has, therefore, been no fraudulent con-
cealment in the case. The appellants have not been treache-
rously led to purchase the title from another, nor to enter upon
and improve the land, considering it as their own; for their
bill furnishes conclusive evidence to the contrary.

But after all, what evidence have we to support any allega-
tion of fraud against the respondent? It is said, that he induced
the appellants to expend their labour and money to improve his
land, by false assurances that he would give them a good title
for it. Is this true? To answer the question correctly we must
again look at the testimony.

In *July*, 1793, the appellants obtained an assignment of a
written permission given by the respondent to *Lawrence*, to en-
ter upon, and hold the land until further orders ; they to have the
preference either to purchase or lease, whenever his title should
be perfected. By virtue of that assignment, they took posses-
sion in the spring of 1794, and occupied the land until *April*,
1797, when they surrendered the written license of 1793, and
by their agent, S. *Parkhurst*, requested what he calls a *new con-*

IN ERROR.
......
ALBANY,
April. 1816.

PARKHURST
v.
VAN CORTLAND.

*tract.* Upon this request, the respondent gave them another written permission, dated the 7th of *April,* 1797, to possess the land, and containing a promise that as soon as his title should be completed by a release from the heirs of Mr. *Clark,* he would give them the preference either to purchase or take a lease. Before, and at the time of giving the last permission, the respondent in several conversations relative to the terms upon which he intended to sell or lease the land, declared that he would sell or lease it *to the occupants as wild land was going at the time of giving the title,* and that no advantage should be taken of their labour. But, although the appellants had, by their agent, *S. Parkhurst,* previous to that time, intimated to him their desire to have better security, he gave, and they accepted, the permission of 1797, as their only written security. This, in my opinion, puts the allegations of fraud, founded on the above conversations, at rest. For, according to *S. Parkhurst's* testimony, the last permission must be considered *as the new contract.* Its language is plain, and cannot be misunderstood. If the appellants were not satisfied with it, they had an election to reject it; but they elected to accept, and, therefore, are concluded by it. But the evidence does not stop here. In *February,* 1803, the respondent wrote a letter to his attorney, (Mr. *Platt,*) requesting him to give leases for three years to the settlers on his *Oriskany* lands; and in that letter he inclosed a list of the settlers, to whom he says he gave permission, several years before, *to hold during his pleasure, without any other consideration than their taking care of and preventing waste on the land.* The bill admits that a copy of this letter was delivered to one of the appellants, when he received the lease for three years. Surely, that copy gave the appellants full notice of the light in which the respondent considered his engagement to them, and after this notice, they accepted from him, and held under a three years lease, with covenants to deliver up the possession at its expiration.

Again; when the lease expired in the spring of 1806, *G. W. F. Parkhurst,* for himself and the other appellants, addressed a letter to the respondent, which unequivocally admits, that he has the absolute disposal of the land, and explicitly negatives every pretence of any agreement with them, either for a deed or a lease upon any terms. What then is the evidence of fraud and deception in this case? It is obvious that the appellants were

ignorant of any, in 1806, and the case furnishes no testimony of a discovery since.

In every point of view in which I have considered this case, I am fully satisfied that the appeal cannot be sustained. I am, therefore, constrained, notwithstanding it may appear hard against the appellants, to concur in the decree made by his honour the chancellor. For, to use the strong language of Mr. J. *Thompson*, in the case of *Jackson* v. *Sill*, (11 *Johns. Rep.* 220.,) " it is better to preserve consistency in legal principles, although it may not always suit the equity of the individual case, than to make those principles bend to what may be thought the substantial justice of each particular case."

ALLEN, BARKER, COCHRAN, FREY, HASCAL, RADCLIFF, SEYMOUR, STEWART, TIBBITS, and WENDELL, Senators, were of the same opinion.

A majority of the court* being of opinion, that the decree of the court of chancery ought to be reversed, it was, thereupon, " ORDERED, ADJUDGED, and DECREED, that the decree appealed from be reversed, &c., and that the proceedings in this cause be remitted to the court of chancery, to the end that the decree made therein, in the said court, prior to the rehearing thereof, and to the making the decree hereby reversed, may be carried into full effect ; and that the respondent pay to the appellants their costs of this appeal, to be taxed and allowed by the said court of chancery."

Decree reversed.