Judge Hitchcock
delivered the opinion of the court:
Upon looking into the facts of this case, the first question which ¡suggests itself is, why the complainants have come into a court of equity. There is no community of interest among the defendants. If Kirtland stands in the situation of mortgagee, and in equity there is no doubt that he does, and these complainants have a right to redeem, then it is true their remedy is in this court. But as to Logan, the only object is to recover from him the possession, which could be much more appropi’iately done by action of ejectment. It is true there is a prayer that the complainants’ title may be quieted; in order, however, to entitle themselves' to this relief, they ought first to obtain the possession. As the defendants have not, however, on these grounds, objected *fc0 the jurisdiction of the court, I will consider the points made in the •case.
It seems to be necessary to examine, in the first place, whether Fowler had any interest in the land in controversy, upon which the judgments of the complainants operated as a lien. If he had, then the complainants have a preferable right, for the land is situate in the county where their judgment was recovered; it was the first judgment in point of time, and within one year from its rendition execution was taken out and levied. The provision of the act regulating judgments and executions, that the lands and tenements of the judgment debtor shall be bound for the satisfaction of the judgment from the first day of .the term in which judgment is entered, is applicable only to legal interests in lands and tenements; to such interests as can be sold upon execution. *20 Nor does a lien always attach where there is such an interest as maybe sold on execution. When a judgment is recovered against, a person in possession of lands, those lands may be sold upon execution, and as between the purchaser and execution debtor, the sale may be good ; still no other person having a better right than the debtor would be affected by such sale. But if the debtor has no other than a mere possessing right, the land is only bound from the time of the levy of the execution.
In order that a judgment may operate as a lien the defendant or judgment debtor must have a legal title. It maybe supposed that this opinion is contrary to those decisions of this court which have gone to sustain sales of mortgaged premises made in execution against mortgagors. It is not our intention to deny the authority of those decisions; we suppose that a mortgagor, where a mortgage is legal, has a perfect title to the mortgaged premises as to all the world, except the mortgagee or those claiming under him, and also as to him until the deed becomes absolute at law by failure to comply with the condition of defeasance. Of course upon such mortgaged premises the lien of a judgment might possibly attach, and the same might be sold in execution. In speaking of a legal mortgage I would be understood as speaking of a mortgage where the condition of defeasance constitutes a part of the deed. In such case the payment of the debt secured by the mortgage would discharge the mortgage; and in case the mortgagee should commence an action of ejectment, if the mortgagor could show that the debt was discharged he would defeat the action. 14 Johns. 43.
It is insisted, in the present case, by the counsel for complainants, *that Kirtland held the premises in controversy merely as mortgagee; that the land was conveyed to him merely as security for the payment of debt. No doubt, in a court of equity, this deed was a deed of mortgage, but at law, the whole title to the land passed out of Fowler; true, he took back a bond conditioned, not that upon the payment of the sum of money therein specified this deed should be void, but that Kirtland should re-convey. Kirtland might at once have had an action of ejectment, and the payment of the money would not have secured Fowler in the possession. The only legal right remaining in Fowler was a right of action upon the bond, provided he first paid the three hundred and sixty-five dollars and interest. In *21 equity he might, upon such payment, compel a reconveyance, but ,at law he had no interest in the land; therefore the judgment of the complainants could not operate as a lien upon this land.
If Fowler had nothing more than an equitable interest in the lands in controversy, it follows, of course, that the complainants acquired nothing by the sheriff’s sale under which they claim title; for no principle is perhaps better settled in our jurisprudence than that a mere equity can not be sold on execution.
Had this, however, been a case of legal mortgage, it is perhaps doubtful whether these complainants would have acquired any title in consequence of the sheriff’s sale. Probably, however, as this sale was approved by the court issuing the execution, so long as that order of approval remained in full force and unreversed, the title would be held good. But we have no doubt that the sale was irregular and never Should have been approved; strip this transaction of the forms by which it is incumbered, and what was in fact sold under the execution of the complainants? What was appraised? Was it the land? Certainly not; but it was the interest which the judgment debtor had in the land; hence this interest was a right existing to redeem the land upon the payment ■of a certain sum of money; in other words, it was a mere equityv of redemption. This was all that was appraised, and was all that was sold under a pretended sale of the land itself. This is an interest which in chancery may be subjected to the payment of a judgment, and if a judgment creditor wishes to subject it, he .should seek his remedy in that court. 29 Ohio L. 84.
But if the judgment creditor prefers to take his execution and proceed against the lands of his debtor, he must be governed by the statute regulating the pale of this species of property. Section *10 of the act regulating judgments and executions provides, “that if execution be levied upon lands and tenements, the officer levying such execution shall call an inquest of three disinterested freeholders, who shall be resident within the county where the lands taken in execution are situate, and administer to them an oath or affirmation to appraise the lands so levied on; and the said freeholders shall return to the said officer, under their hands and seals, an estimate of the real value in money of said estate, upon actual view of the premises, forthwith after such view.” 29 Ohio L. 103. The word “ estate,” in the last clause of the section, is used in the same sense with the word “ land ” in the former. It is *22 not the interest of the debtor in the land, but the land itself which is to be appraised ; and this land can not bo sold by the sheriff for a sum short of two-thirds of the appraised value. The sheriffs deed when executed, it is true, conveys nothing more than the interest of the judgment debtor, nor could the debtor himself convey anything beyond this. But it is the intention of the law that-two-thirds of the actual value of the land shall be received, otherwise it shall not be sold.
Appraisers have but one thing to examine and ascertain, and that is the “value ” of the land “in money.” With the title they have-no concern, with incumbrances they have no concern; and they can not with any more propriety take into consideration a.mortgage incumbrance, than they can the lien of a former judgment or the possibility of a claim for dower. Taking into consideration the one or the other of these, or anything else than the value of the property, they violate the spirit' of their oaths, and their appraisal is not in conformity with the law, and ought not to be sustained.
In the case under consideration, the appraisers did not return to the sheriff, under their hands and seals, the “real value in money” of the estate. They deducted from this “real value” a large sum of money supjiosed to be due from Eowler to Kirtland, and returned the balance as the value, and for two-thirds of this balance the land was sold. There is no doubt but they acted honestly, but it was under a misapprehension of the law.
Upon a view of the whole case, the court are of opinion that-the demurrer is well taken, and the bill will be dismissed with costs.