By the Court. Duer, J.
It is with considerable reluctance that we have arrived at the conclusion that this action, upon the evidence before us, cannot be maintained; but we are now satisfied, that, without an entire disregard of the authorities that ought to govern us, it is a conclusion from which we cannot escape.
It is very doubtful whether Mr. Taiman, who, by the assignment to his co-plaintiff, had divested himself of all interest in the subject of the .action, could properly be made a party, but as this objection is not raised in the pleadings, and was riot taken on the trial, it cannot now be entertained. Admitting that the proof that has been given of his entire want of interest would preclude us from rendering a judgment in his favor, yet, under the provisions of the Code (§ 294), it would be no bar to a judgment in favor of his co-plaintiff, whose right to maintain the action, if maintainable at all, is not disputed.
The only question, therefore, and that which alone was meant to be reserved upon the trial, plainly is, whether the entry in the sales-book of the auctioneer is a sufficient note or memorandum of the alleged sale to the defendant, within those provisions of the statute of frauds which declare “ that every contract for the sale of lands shall be void, unless the same, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the sale is to be made, or by an agent of such party, lawfully authorized.” (2 R. S. 135, §§ 8, 9.)
There are some of the objections that have been taken to the sufficiency of the memorandum that we are clearly of opinion are' untenable, and these I shall first notice.
It is said that the writing produced, as evidence of the contract, does not contain the names of the owners of the lots to be sold, but the statute does not require that it should. When the sale is by auction the name of the person directing or authorizing the sale, and by whom a title is to be given, must .doubtless be stated ; but it is not necessary that he should be the owner of the lands, in the full sense of the term, or indeed have any beneficial interest whatever. It is quite immaterial whether he is an absolute owner, or a trustee having a legal title, or acting merely under a power. It is enough that he is *401 legally competent to make and complete the sale. Here the name of George F. Taiman, trustee, is entered in the column of the entry of the sales-book which is headed £‘ Employers,” and we think this a sufficient declaration, that, as a trustee, he directed the sale of the lots, and would convey them to the purchasers entitled to demand conveyances. It was quite unnecessary to mention the names of those for whom, as a trustee, he was acting.
The objection that the entry in the sales-book, although subscribed by the auctioneer, is subscribed by him in his own name, and not as agent for the party making the sale, we are also convinced ought not to be sustained. This objection, it is true, derives some countenance from the language of Chancellor Walworth in Champlin v. Parish, but when that case is examined it will be found that the entry, which was then relied on as a sufficient memorandum, was not subscribed by the auctioneer at all; and all that the Chancellor probably meant to say is, that since that alteration in the law which the revised statutes have made, an actual subscription, as distinguished from a mere signing of the name, either of the party making the sale, or of his agent, the auctioneer, is indispensable, which is undoubtedly true, and has in several cases been expressly decided. (Davis v. Shields, 26 Wend. 34; Townsend v. Hubbard, 4 Hill, 351.) Hnder the old statute of frauds, which required that the necessary writing, the evidence of the sale, should be signed, not subscribed, by the party to be charged, or his agent, it was held, that when the sale of lands is by auction, an entry by the auctioneer in his sales-book of the name of the highest bidder, as the purchaser, is a sufficient signing to give validity to the contract. It was not necessary that the auctioneer should sign his own name at all. (White v. Proctor, 4 Taunt. 209; McComb v. Wright, 4 John. C. R. 659.) Hnder our present statute it is still necessary that the name of the purchaser should be stated in the writing, which is designed to be a memorandum of the contract, but it is also necessary, to render the memorandum valid, that it shall be subscribed by the party making the sale, or by the auctioneer, as his agent. It is not necessary, however, we are convinced, that when the auctioneer subscribes he should declare, by some addition to *402 his signature, that it is made on. behalf of, or as the agent of, the seller. It is sufficient that it is apparent, on the face of the writing, that it is only in the capacity of an agent that he can be acting; and this is manifest, in all cases, where the writing, as in the case before us, contains the names of other persons as the seller and purchaser.
The exact question arose, and was decided by this court, as we now decide. it, in the case of Pinckney v. Hagadorn, 1 Duer, 89. Hor should we have thought it expedient to reconsider it had we not been pressed with the authority of the Chancellor’s observation in Champlin v. Parish. We believe that we have given the true explanation of his language in that case, but were we satisfied that he meant to be understood in the literal sense that his words import, we should still esteem it our duty to adhere to our former decision.
The last of the objections that we hold to be groundless is, that the particulars of the contract were not reduced to writing at the time of the sale. The argument is, that, as the lots were separately sold, the sale of each was a separate contract, which to render it valid ought to have been signed by the auctioneer as soon the name of the purchaser was declared ; whereas, the name of the auctioneer was not subscribed at all until the sales of the day, which embraced many lots, in addition to those struck down to the defendant, were completed, and it was then subscribed to an entry which embraced them all. We think that this course of proceeding on the part of the auctioneer was entirely correct, and it is not denied to have been that which a long and invariable usage has sanctioned. Although his name was subscribed but once, and not until the sales of the day were closed, the subscription then made was intended to apply, and ought, therefore, to be construed as applying, to every sale, considered as a distinct contract, which the entry that he subscribed properly embraced. The sales made by an auctioneer on the same day and without interruption are usually, and we think properly, regarded as a contimious proceeding, and when the proper entries in relation to each lot that is sold are made, as the sale proceeds, the final signature, by which all are to be attested, may with propriety be delayed, until the sales, considered as one proceeding, have been fully closed.
*403 Such would be our decision, even were it true, as was assumed upon the argument, that the statutory provision, which requires that in sales by auction all the particulars of the contract must be entered by the auctioneer in his sale-book at the time of the sale, were applicable to the sale of lands; but it so happens that the provision is, by its express words, confined to the sale of goods (2 R. S. 136, § 4), and, for ourselves, we should decline, upon a supposed analogy, to extend its application. When lands, are sold by auction the proper entries, as a memorandum of the contract, must, doubtless, be made by the auctioneer, within a reasonable time; but that they must be made at the time of the sale, in the same strict and literal sense of the words in which it seems that they must be understood in their application to the sale of goods (Goelet v. Cowdrey, 1 Duer, 131), has never yet been decided, and it is a decision that we are not prepared, nor, unless constrained by an overruling authority, would consent to make.
The objections to the sufficiency of the memorandum that remain to be stated, are those to which no satisfactory answer has, in our judgment, been given. They are—that the entry in the sale-book, as subscribed by the auctioneer, contains no statement of the terms and conditions of the sale; and that the description of the lots is too indefinite and uncertain; and that these are defects which, even in a court of equity, would render the contract void, and prevent a decree for its specific performance.
In the early case of Parkhurst v. Van Cortlandt (1 John. Ch. R. 273), Chancellor Kent, after a careful review of the prior decisions, states, with admirable precision, the requisites of a valid note or memorandum in writing, within the provisions of the statute. It must not only be signed by the proper party, but must contain all the essential terms of the contract, expressed with such clearness and certainty that they may be understood from the writing itself, or some other paper to which the writing refers, without the necessity of resorting to parole proof. It is true that the decree of the Chancellor in this case was reversed in the Court of Errors, but it was so upon the sole ground that there was sufficient proof of a part performance to let in parole proof, and take the casé out of the statute *404 (14 John. 15). And Thomson,. C. J., in delivering his judgment, distinctly admits, that when there is no part performance, and the action is founded alone upon the writing which is relied on as evidence of the contract, parole evidence, to remove its ambiguities and supply its defects, cannot be received. The writing, unless it contain all the particulars of a valid contract, so as to enable a court of equity, without further proof, to decree its performance, is wholly void; and it is scarcely necessary to add, that where the contract, upon the face of the writing, is so uncertain and defective, that its performance can-, not be decreed in equity, no action for its breach can be maintained at law. We are not aware that these rules have ever been departed from. On the contrary, we believe that in all subsequent cases their authority is implicitly, or distinctly admitted.
Let us apply them to the case now before us. In the entry in the sale book which was produced on the trial as evidence of the contract, the column headed “ terms of sale” was an entire blank; and it is not denied, that if such was its condition on the day of the sale, there was no contract between the parties, upon which the action can be maintained. It was, however, proved upon the trial, that upon the day of the sale, and before it was opened, a letter from Mr. Taiman to the auctioneer, dated the 17th of May, in which the terms and conditions of the sale he directed to be made were fully stated, was attached to the entry in the book; and that from it the terms of the sale were read by the auctioneer, and made known to the bidders—and it has been contended that by this proof the defects in the entry, as a memorandum in writing of the contract, were supplied, and the right of the plaintiff to maintain the action fully established.
We have found ourselves unable to adopt this conclusion. We cannot regard the letter of Mr. Taiman as a constituent part of the entry, which, as a memorandum of the contract, was subscribed by the auctioneer. We do not think it was rendered so by the mere circumstance that, for a temporary purpose, it was attached to the entry on the day of sale. This did not and could not alter its original character of a separate, paper, written and completed as such before any sales were *405 made—signed not by the auctioneer, but by Mr. Taiman himself, and designed to convey his instructions to the auctioneer as to the conduct of future sales, and not to form a part of any contract with future purchasers. It was still a letter which, as such, belonged to the auctioneer, which, for his own convenience and in the exercise of his discretion, he attached to the entry, and in the exercise of his own discretion had a right to remove, and did remove. It was not considered and treated by him as a constituent and permanent part of the entry which he subscribed. If the letter retained its character of a separate paper, the fact that the auctioneer read from it the terms of the sale was wholly unimportant. The terms of the sale might just as well have been orally stated. The reading of them from a separate paper had not the effect of so connecting the letter and the entry as to make them conjointly sufficient legal proof of an entire contract subscribed as agent by the auctioneer. In each of the cases of Hende v. Whitehouse (7 East. 558), and The First Baptist Church v. Bigelow (16 Wend. 130), it appears that the terms of sale had been read by the auctioneer from a separate paper, and in each it was held that the paper could not be received as evidence, to supply the defects of the memorandum in writing which the auctioneer had signed.
Again, if the letter could be used for the purpose of making known the terms of sale, and by such use become, as evidence, a part of the contract, it had been used for that purpose on the previous sale of the same lots on the 18th May, and had thus become an essential part of the memorandum of the contract of sale then made. It could not, however, be at the same time an integral part of two distinct contracts, each of which the purposes of the action required to be proved.
Next, as to the uncertainty in the description of the lots. They are described by their numbers as lots in 132d and 133d streets, without any designation of the lots belonging severally to each, and it cannot be denied that the uncertainty which this omission created, rendered the contract, without extrinsic proof, incapable of execution. It is said, however, and it is the only answer that has been given to the objection, that the lots are described with sufficient certainty in the entry in the sale-book of their former sale on the 18th May; but to this the *406 reply seems conclusive, that there was no reference to this prior entry in that on which the present action is founded, and consequently, that the proof relied on was inadmissible.
In the exercise of the power reserved to us on the trial, the verdict must be set aside, and a judgment, dismissing the complaint with costs, be entered for the defendant.