# WHEELING.

## CAMPBELL *v.* FETTERMAN'S HEIRS.

Submitted June 17, 1882—Decided October 28, 1882.

1. Some of the principles stated, upon which a court of equity will decree the specific execution of a parol contract for the purchase land ; and the evidence given of a case, in which such decree is held proper.   (p. 403.)

2. Parol evidence, in the absence of fraud or mistake, will not be received to engraft upon or incorporate with a valid contract an incident occurring contemporaneously therewith and inconsistent with its terms.   This rule applies in every case, where the question is, *what* is the agreement.   But collateral circumstances attending the agreement and mistake or fraud in the procurement or execution of the agreement may be proved by parol evidence.   (p. 410.)

3. As a general rule a tenant is not permitted to question the title of his landlord ; yet from the time the landlord has notice that the person who formerly held as tenant claims to be in possession, not as tenant but in his own right, the relation of landlord and tenant ceases.   (p. 412.)

4. Where a tenant in possession purchases from his landlord the premises leased to him, if the contract of purchase is established, the possession of such former tenant will be treated, after the date of the purchase, as a possession under and by virtue of such purchase and not as a tenancy.   (p. 412.)

5. Neither the statute of frauds nor the law of agency requires that the authority of an agent to make a parol contract, whether oral or written, shall be in writing.   The authority to make a

deed, or contract under seal, must be under seal. But a contract for the sale of lands need not be under seal the statute of frauds only requiring that such contract shall be in writing and signed by the party to be charged or his agent. (p. 413.)

6. A person in possession of real estate is sufficient notice to a purchaser, contracting with a claimant of such real estate not in possession, to put him on the enquiry, and if he takes a conveyance from such claimant, he will be charged in favor of the person so in possession with all the information such enquiry would have given him if diligently pursued. (p. 414.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Taylor, rendered on the 14th day of March, 1879, in a cause in said court then pending, wherein Matthew Campbell was plaintiff, and Sarah B. Fetterman's heirs and others were defendants, allowed upon the petition of said defendants.

Hon. A. Brooks Fleming, judge of the second judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the Court.

*James Morrow, jr.*, for appellant, Henry C. Laughlin, cited the following authorities: 4 Harr. & McH. 252; 22 Gratt. 370; 1 Greenl. Ev. § 275 *et seq.*; 5 Wend. 187; 28 Gratt. 741; 22 Gratt. 370; 17 W. Va. 313.

*C. Boggess* for appellants cited the following authorities: Brown Stat. Frauds § 10; 3 Rand. 537; 2 Leigh 630; 13 Gratt. 710; 1 Greenl. Ev. § 275; 16 W. Va. 65; 1 Story Eq. Juris. § 761; *Id.* 763; Brown Stat. Frauds §§ 477–481; Story Eq. Juris. §§ 762–764; 4 Wall. 513.

*Edwin Maxwell* for appellee cited 18 Gratt. 401 and 17 W. Va. 313.

*C. C. Cole* for appellee cited the following authorities: 6 W. Va; 249; 1 Lead. Cas. Eq. (3d Am. Ed.) 719; 2 Story Eq. Juris. §§ 760, 761; 14 Johns. Chy. 15; 5 Wend. 644; Fry Spec. Perf. (1871) 258–260; 3 Rand. 238; 3 Pet. 43; 9 Gratt. 220; 2 Casey 519; 1 Lead. Cas. Eq. (3d Am. Ed.) 735; 6 Watts 464; 8 Watts & S. 60; 3 Ves. 378; 5 Myl. & C. 167

(46 E. C. R. 152); 1 Hare 26; 1 Exch. Rep. 91; 2 Phill. Ev. *970; 10 W. Va. 321; 6 Wall. 83; 3 How. 333; 1 McLean C. C. 110; 1 Paine C. C. 525; 5 Leigh 627; 16 Ves. 249; 17 Ves. 433.

SNYDER, JUDGE, announced the opinion of the Court:

This suit was instituted in the circuit court of Taylor county in June, 1875. The material allegations of the bill are, that on the —— day of December, 1858, the plaintiff, M. Campbell, purchased from Sarah B. Fetterman by a contract made with W. B. Fetterman, her son and agent, a certain parcel of land situate in the town of Grafton in Taylor county between Latrobe alley and Elizabeth street and bounded as follows : "On the south by Latrobe alley and fronting thereon 90.4 feet, on the north by Elizabeth street, on the east by a lot sold by the said Sarah B. Fetterman or her heirs to one Evans, and on the west by a street. Said parcel of land is known on the plat of said town as lots Nos. 21 and 22"; that the plaintiff was to pay for said lots one thousand one hundred and thirty-seven dollars, of which he had paid prior to said contract one hundred and thirty-seven dollars on account of the purchase-money for another lot which he had purchased of said Sarah B. Fetterman and for which she was unable to make him a title, and on the 29th day of December, 1858, in payment of the residue of said purchase money, he deposited in the Wheeling Savings Institution one thousand dollars in gold to the credit of said W. B. Fetterman; that at the time of said deposit the said W. B. Fetterman was in Pittsburgh and on his return to Grafton he informed the plaintiff that he had checked out said one thousand dollars, and said as he had not then a deed ready he would for the present give plaintiff a note as agent for his mother, the said Sarah B. Fetterman, until he could have the deed executed, as that was the best and safest way to fix the matter up until the the deed was made; that before said purchase the plaintiff had been in possession of said lots for a short time as the tenant of said Sarah, and at the time of the purchase the possession was turned over to him as purchaser; and that he, by himself and his tenants, has been in the exclusive possession thereof ever since claiming the said lots as his own under

said purchase; that no rent has ever been demanded of him and he has paid none, and he has paid the taxes thereon; that relying upon his said purchase he has made valuable and permanent improvements on said lots by erecting thereon a store house at a cost of six hundred dollars, and various other repairs and permanent improvements at an aggregate expense of at least eight hundred dollars; that said improvements were made with the full knowledge of the agents and heirs of said Sarah, she residing in the city of Pittsburgh during her life; and that in part by reason of said improvements the said property is now much more valuable than it was at the time he made the purchase; that the plaintiff made frequent requests of the said W. B. Fetterman for a deed to said lots, and was put off from time to time with the assurance that there would be no trouble about the matter, and the plaintiff being in possession and relying upon said assurances he took no steps to compel a conveyance as he otherwise would have done; that said Sarah died in July, 1862, and after her death George W. Fetterman one of her sons and heirs at law conveyed to one George S. Crawford all his right, title and interest of whatever kind in the estate of his mother by deed, dated September 2, 1862; and that said Crawford, by deed of same date, conveyed the same to Louisa E. Fetterman the wife of said George W. Fetterman; that said deeds were voluntary and without valuable consideration; and that said Louisa E. by deed, dated January 19, 1870, conveyed the interest in said estate conveyed to her as aforesaid to Henry C. Laughlin who had full notice and knowledge of the purchase and equities of plaintiff in said lots; that in June 1873, the heirs of said Sarah B. Fetterman instituted actions of ejectment against the tenants of the plaintiff and by the judgment of the said circuit court of Taylor county at the March term 1875, thereof recovered the possession of said lots from said tenants. The prayer is for a specific execution of said contract of purchase, for an injunction against said judgments in ejectment and for general relief.

The plaintiff exhibited with his bill the certificate of deposit and note, therein referred to, and they are as follows:

"WHEELING SAVINGS INSTITUTION, ⎫
                December 29, 1858. ⎭

"Dr. M. Campbell has this day deposited to your credit one thousand dollars in gold.          "WILLIAM McCOY, Tr.

"To W. B. FETTERMAN, ESQ."

"GRAFTON, March 23, 1859.

"$1,000. One day after date, I promise to pay to the order of M. Campbell one thousand dollars, with interest from date, for value received. · Witness my hand and seal.

"W. B. FETTERMAN, [Seal.]
· "*Agent for Sarah B. Fetterman.*"

The defendants Henry C. Laughlin, G. L. B. Fetterman and W. B. Fetterman filed separate answers to the bill to which the plaintiff replied generally.

The said Henry C. Laughlin disclaimed any personal knowledge of the contract of purchase set up by the plaintiff, and alleged that by the conveyance to him from Louisa E. Fetterman as aforesaid he became the owner of one-fifth of the estate of said Sarah B. Fetterman, including the lots in controversy, without notice of any claim or equity of the plaintiff in said lots. And the other defendants deny all the material allegations of the plaintiff's bill so far as they relate to the purchase of the lots in Grafton therein mentioned; and especially do they deny that at the time of said alleged purchase the said W. B. Fetterman was the agent of his mother authorized to make sales of her real estate, or that he made any sale of said lots to the plaintiff as agent or otherwise. In regard to the said one thousand dollars the said W. B. Fetterman positively denies that it was paid to him on account of the purchase of said lots; but on the contrary he avers that it was a loan made to him by the plaintiff and that to make the security satisfactory he gave the plaintiff his note for it signed as agent for his mother, the said Sarah B. Fetterman.

A large number of depositions were taken by both the plaintiff and defendants, bearing more or less directly upon the matters alleged in the bill and denied in the answers. And several exceptions were taken to said depositions. The cause having been regularly set for hearing, a decree was

entered therein by the court on the 14th day of March, 1879, declaring that the contract alleged in the plaintiff's bill should be specifically executed, and appointed a commissioner to convey the interests of the defendants, the heirs at law of said Sarah B. Fetterman, deceased, to the plaintiff if the said heirs failed to make such conveyance in sixty days from the date of said decree, and that the plaintiff recover his costs, &c.

From this decree the defendants G. L. B. Fetterman, H. C. Laughlin and W. B. Fetterman obtained an appeal with *supersedeas* to this Court. The most material question to be determined is whether or not a contract has been shown in this cause which a court of equity will enforce? The principles of law upon which parol contracts for the purchase of lands will be specifically decreed in courts of equity have been fully settled by a number of decisions of this Court, and from them the following doctrines, among others, may be deduced:

1. The jurisdiction to enforce such contracts is entirely settled and unquestioned.

2. That the exercise of such jurisdiction is an application to the sound discretion of the court and is not a right to be granted *ex debito justitiae;* but when the contract is unobjectionable it is as much a matter of course for courts of equity to decree the specific execution of it as it is for courts of law to give damages for a breach of it.

3. When there has been a part performance by the purchaser being put in possession of the land and the payment of the purchase-money, and valuable improvements have been made upon the land by the purchaser upon the faith of the contract, the statute of frauds cannot be successfully pleaded in bar of the performance of it in a court of equity.

4. That in such cases it must appear: 1st. That the parol agreement relied on is certain and definite in its terms; 2d. The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and 3d. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the purchaser, and place him in a situation which does not lie in compensation at law.    *W. Va. O. & O. L. Co.* v. *Vinal,* 14

W. Va. 637; *Baldenburg* v. *Warden, Id.* 397; *Middleton* v. *Selby,* 19 *Id.* 167; *Lowry* v. *Buffington,* 6 *Id.* 249.

Has such a contract been made and proved in this case? The plaintiff testifies that in November 1858, he took possession of a house on the land in controversy as the tenant of Mrs. Sarah B. Fetterman; that Mrs. Fetterman resided in the city of Pittsburgh and had a large quantity of land in Taylor county embracing the lands on which the towns of Fetterman and Grafton are now located, and that her son, W. B. Fetterman, acted and was generally recognized as her authorized agent for the sale of said lands, collecting rents and managing them generally; that the said W. B. Fetterman was his intimate and confidential friend; that after frequent negotiations with the said Fetterman it was agreed between them that the plaintiff should have the two lots, or the land which now constitutes said lots in controversy at the price of one thousand one hundred dollars; and that Fetterman was to place certain specified repairs upon the premises as a part of said agreement; the contract of purchase was made some time in December 1858, and the purchase money paid as follows: The plaintiff had a claim of one hundred and thirty-seven dollars against Mrs. Fetterman for a lot theretofore sold by her to him and for which she could not make him a title, for this sum the said W. B. Fetterman agreed to credit the plaintiff on his purchase one hundred dollars and the remaining one thousand dollars was paid by the plaintiff depositing that sum in bank in Wheeling; that at the time the contract was made the said Fetterman was about to leave Grafton on a trip to Pittsburgh; that after he left, the plaintiff on the 29th day of December, 1858, deposited said one thousand dollars in gold in the Wheeling Savings Institution to the credit of said Fetterman as shown by the certificate exhibited with plaintiff's bill; that on his return from Pittsburgh in March 1859, the plaintiff desired him to give a title-bond for the lots until a proper deed could be procured from his mother; the said Fetterman then told plaintiff that he had drawn the said one thousand dollars out of the bank at Wheeling, and said that the best and safest way to secure the property was for him to give the plaintiff his note as agent for his mother, and that

he did then give the note or bond, filed with the bill, stating that it was as good as a title-bond; that the said Fetterman had read law and the plaintiff, having great confidence in his intelligence and honesty, accepted said note as the proper evidence of his purchase; that from the time of said contract and purchase, and in pursuance thereof, the plaintiff held, used and occupied the property, by himself and his tenants, as his own adverse to all the world; that he paid taxes and made improvements upon it to a large amount, about eight hundred dollars for improvements alone—the said improvements consisting of the building of an office, erecting an addition to the office and converting it into a drug-store, putting roof on the house, making side-walks, &c.; that these improvements were made with a knowledge of the Fettermans and their agents who always treated the plaintiff as the owner of the property; that they never demanded any rent after the purchase and the plaintiff paid none; that they had the lots put on the assessor's books for taxes in the name of plaintiff and he paid all the taxes and exhibits a number of the tax tickets paid by him; that the price paid for the property was really a high price for it, and that the property is now worth, by reason of the improvements alone, one thousand dollars more than it was then; that he went to Pittsburgh to get a deed for the property before the death of Mrs. Fetterman and was then assured by her sons, the said W. B. and G. L. B. Fetterman, that their mother was not then in a condition to do any business, but that plaintiff would not be allowed to suffer and that the matter would be all right, and after her death he again went to Pittsburgh and was then again put off by the sons upon the assurance that there would be no difficulty as soon as the heirs could be got to make the title; and on frequent occasions, subsequently, the defendant G. L. B. Fetterman who was the administrator of his mother recognized the claim of the plaintiff to said lots and told the plaintiff as soon as he could get matters arranged with his brother, W. B. Fetterman, the matter would be satisfactorily settled with the plaintiff; that the first knowledge he ever had that the Fettermans set up any claim to the lots after his purchase was when the suits in ejectment were brought against his tenants in July 1873;

and that when he bought the property it was enclosed by a fence and the boundary so enclosed is the same that now constitutes lots Nos. 21 and 22 on the plat of the town of Grafton. The foregoing is the substance of the testimony of the plaintiff so far as I regard it material.

The witness Lee Swearingen testifies that W. B. Fetterman was acting as agent for his mother and had charge of her property in Taylor county, and by his words left the impression on witness' mind that he had sold the lots in suit to plaintiff and had received for same one thousand dollars in gold.

William Carr testifies that W. B. Fetterman told him repeatedly that he had sold the property in suit to plaintiff, Dr. Campbell, and that he seemed well satisfied with the sale. W. H. Jaco and John Evans each testify that said Fetterman told them the same. The latter says that he bought two lots adjoining the lots in controversy and when the lots were run off the defendant, G. L. B. Fetterman, was present and that witness wanted to run the lines so as to include part of Dr. Campbell's lots, and said Fetterman said that could not be done as W. B. Fetterman had sold those lots to Dr. Campbell for one thousand dollars in gold, and that he would not sell them a second time.

John M. Rodgers testifies that about the year 1859 he was working for the said W. B. Fetterman and he told witness that he was acting as agent for his mother collecting rents and selling lots, and also told him that he had sold the Jaco property to Dr. Campbell for one thousand dollars in gold, and that the property referred to by him as the Jaco property is the same on which the residence and drug-store of Dr. Campbell are situate.

B. F. Martin testifies that W. B. Fetterman sold a number of lots in Grafton and Fetterman and that he gave the purchasers title-bonds signed by himself as agent for Sarah B. Fetterman; this was in 1856 and 1858; and that he had some of the title-bonds so signed in his possession. He also says, from his knowledge of the actings, doings and presence of W. B. Fetterman among the people about Grafton, the fact that he was the authorized agent of his mother was notorious; and that contracts of sale of lots made by him were in

all cases known to him ratified by the other heirs making deeds for said sales.

John Bradshaw testifies that from March 1863 to 1867, he acted as sub-agent for G. L. B. Fetterman, the administrator of his mother and attorney in fact for the other heirs by power of attorney duly recorded, and had the care of the property of Mrs. Fetterman's heirs in Taylor county; that he refused to pay the taxes on the property in controversy because it was occupied by Dr. Campbell, and he was instructed by Mr. Fetterman not to pay the taxes on property where it was occupied; that he paid off claims contracted by W. B. Fetterman and his payments were ratified by the attorney in fact for the heirs; and that he never heard any of the Fetterman heirs dispute the agency of W. B. Fetterman until very recently.

Several other witnesses testify that W. B. Fetterman told them that he had sold the property in controversy to Dr. Campbell for one thousand dollars in gold; also, that the property at the time of the sale in 1858 was not worth more than one thousand dollars. The testimony of the plaintiff is corroborated by several witnesses as to the improvements put on the property by him, the payment of the taxes and the occupancy of the property by the plaintiff and his tenants ever since the purchase.

The defendant W. B. Fetterman testified on behalf of the defendants, that the plaintiff offered him a loan of one thousand dollars, which he accepted, and that he did not then or afterwards agree to sell, or sell, the property in controversy; that the money was placed to his credit in bank in Wheeling in the fall of 1858, and on the 23d day of March, 1859, he gave plaintiff a promissory note for that amount at one day after date; and that he never considered this money as the purchase-money for anything; that at that time and until 1861, when he finally left, he resided at Valley Falls and was exercising general supervision over his mother's property situate in Marion and Taylor counties; that he had no power of attorney to sell property, or rent or collect rents; that Robert Robb of Pittsburgh was the attorney in fact of his mother until her death, authorized to sell property and make deeds; that he had the property in controversy fixed up

and let Dr. Campbell go into it as tenant; that plaintiff was in at the time of the loan; that he built the office on it at the expense of the estate of his mother; that he has no recollection of having said to any one that he had sold the property to plaintiff or that he ever heard that plaintiff claimed to have purchased it until a considerable time after he left Virginia in 1861; that he did not tell plaintiff that a note was as good as a title-bond; that in making sales it was his custom to give title-bonds and he does not recollect an instance in which he did not. A number of questions were asked this witness about the transactions between him and plaintiff and as to statements made by him in regard to the purchase by the plaintiff, and to nearly all of which he replied that he had no recollection further than that he was satisfied he never sold the property and that the money transaction was a loan and not a purchase.

G. L. B. Fetterman testifies that he is the administrator of his mother and one of her heirs and has a power of attorney from the other heirs; that, in 1864, in a conversation with plaintiff, the plaintiff told him that if the Fettermans would consider the agreement a sale at the time of the loan of the one thousand dollars, he would take the property and pay something for the rent, but at that time plaintiff did not claim a purchase of the property; that he never demanded rent of plaintiff because he always considered that the rent was running against the debt held by plaintiff; that he never told John Evans that his brother had sold the lots to plaintiff and that he would not sell them again; that he paid taxes on the property of his mother including the taxes on the lots in suit for a part of the time, and also paid bills for improvements on said lots and files receipts for some of said payments, but these receipts or memoranda do not show definitely whether they were for work done before or after the purchase by the plaintiff or whether the taxes were paid on that property; this witness denies that he ever considered the property as the plaintiff's, or that he in any way recognized the claim thereto by the plaintiff.

Several witnesses for defendants testified to the fact that they had done work on the property by the repairing and construction of the buildings thereon; and that they were

employed by W. B. Fetterman and paid by the Fettermans. It does not appear that this work was not done as a part of the consideration paid for the property as stated by the plaintiff in his deposition.

Henry C. Laughlin one of the defendants testifies that he became acquainted with plaintiff in the fall of 1869 or 1870; that he never admitted any right, title or claim of the plaintiff to the property in controversy; that about that time he had a conversation with plaintiff about the property, in which plaintiff exhibited to him a note for one thousand dollars and stated that it was to go in payment for the property; and that in another conversation the plaintiff stated that by the understanding with W. B. Fetterman and himself he was to have the property in suit for the one thousand dollars, the note of which he had; and that witness told plaintiff he would not consent to such an arrangement, and soon after set about instituting suit for the property and had notices served on the parties occupying the property.

The foregoing contains a condensed statement of all the testimony with some matters omitted which I do not regard material. I have given the evidence thus at length, because the suit involves and depends more on questions of fact than upon the law.

The defendants excepted to portions of the depositions of the plaintiff upon the ground that they detailed statements of W. B. Fetterman as agent of his mother, which were made after the transaction and cannot, therefore, bind Mrs. Fetterman or her heirs. It may be conceded that the declarations of an agent, not a part of the *res gestæ*, are not competent evidence to establish the act or prove the transaction of the agent. But in this case the plaintiff and said W. B. Fetterman were the only parties cognizant of the contract of purchase, and as their testimony is in conflict, it seems to me unquestionable, that proof of the declarations of said Fetterman made subsequent to the purchase are admissible evidence to contradict his testimony in the case and support that of the plaintiff. I think, therefore, this exception was properly disregarded by the circuit court.

The defendants also excepted to the deposition of the plaintiff, because it was incompetent for him to testify that

the note for one thousand dollars was intended as a receipt or title-bond and not as a contract for the payment of money; that said note or ·bond and the certificate of deposit for said one thousand dollars taken together, or separately, constitute evidence of a loan of money and not a payment of a debt; and that they have a well defined legal significance which cannot be changed or explained by parol testimony. It is not questioned that parol evidence, in the absence of fraud or mistake, will not be received to engraft upon or incorporate with a valid written contract an incident occurring contemporaneously therewith and inconsistent with its terms. *Lockwood* v. *Holliday*, 16 W. Va. 651.

This rule applies in every case where the question is, *what is the agreement.* But collateral circumstances attending an agreement may be proved by parol evidence. *Ratcliffe* v. *Allison*, 3 Rand. 537; *Alexander* v. *Newton*, 2 Gratt. 266; *Vance* v. *Snyder*, 6 W. Va. 24.

In *Ratcliffe* v. *Allison*, *supra*, the defendant was the owner of land on which a town was laid out; that he had built a tavern at the place and had constantly expressed his determination not to sell a lot to any person who would keep a tavern on it, because this would materially injure his own; that in conversation with the plaintiff prior to his purchase, he had stated this determination, and the plaintiff had replied, that he had no idea of keeping a tavern, and would have nothing to do with one; and that relying on this assurance he had entered into the written agreement, without introducing into it any stipulation or condition prohibiting the plaintiff from keeping a tavern; that when he applied for a deed the defendant offered him one containing such conditions, which the plaintiff refused, and brought suit for a specific execution of the written contract; and the court admitted parol evidence of the conditions set up by the defendant and refused to decree a specific execution of the contract. If parol evidence can thus be received to modify a written contract in opposition to the enforcement of a contract for land, it seems to me it may, upon the same principles, be received to explain such contract in a suit to enforce specific execution, especially when the writing is collateral to the contract sued on. Such evidence was received and

the contract, as modified by it, specifically enforced by this Court in the case of *Creigh* v. *Boggs*, 19 W. Va. 240

In the case at bar the plaintiff testifies that he deposited in the bank at Wheeling one thousand dollars in gold in accordance with an agreement at the time of the purchase and in payment of the purchase-money for the lots or land in controversy, and that upon the return of the agent, W. B. Fetterman, from Pittsburgh, about three months thereafter, he applied to him for a title-bond until such time as he could procure a deed from Mrs. Fetterman; that said Fetterman said to him that the best and safest way to secure the property was for him to give his note as agent for his mother, that it was as good as a title-bond; that relying upon this statement and knowing that said Fetterman had studied law, and having the most explicit confidence in his intelligence and honesty, the plaintiff received from him the note as evidence of his purchase.   It is true the said Fetterman says the transaction was a loan and not a purchase; but as he is so often contradicted by disinterested witnesses as to other material facts, and his recollection shown to be quite indifferent, his testimony is greatly weakened if not rendered entirely worthless for any purpose, and, therefore, I have no hesitation in adopting the testimony of the plaintiff as the true explanation of the transaction.   This view is sustained by the fact that the note, as it is called, though it is a bond under seal, is signed by said Fetterman *as agent for his mother*.   If it had been a loan of money to him, as he claims it was, why did he sign it as agent of his mother?   And if he had no power of attorney from his mother why did he seal it as a bond which he could only do by authority under seal.   It is more likely that the instrument was sealed because it was intended as a contract for land than because it was merely a note for money loaned.   Fetterman's statement, at the time he gave this bond, was that it was as good as a title-bond.   If he is now allowed to insist upon it as a note for money loaned and not as a title-bond, that would be a fraud upon the plaintiff, and to prevent such fraud parol evidence is ·clearly admissible.   Fraud in the procurement of an instrument for one purpose will prevent the instrument from being used for a different purpose.   In such cases courts uniformily admit

parol evidence.    But aside from this view, it will be observed that the contract of sale was made in December, 1858, and this note is dated March 23, 1859.    It is not part of the contract of purchase.    The contract sued on is a parol contract and this note is a subsequent and collateral matter and may, therefore, under the decisions before cited, be explained by parol evidence and the true character given to it as understood by the parties at the time it was executed.    *Parkhurst* v. *Van Cortlandt*, 14 Johns. 15.

It is, however, claimed by the appellants, that the plaintiff being in possession of the premises as the tenant of Mrs. Fetterman, at the time of the contract of purchase, his subsequent possession must be referred to his tenancy and not to a contract of purchase, and cannot, therefore, be relied on as a part performance of said contract.    As a general rule a tenant is not permitted to question his landlord's title; yet from the time that the landlord has notice that the person, who formerly held as tenant, claims to be in possession, not as tenant, but in his own right, the relation of landlord and tenant ceases.    *Willison* v. *Watkins*, 3 Pet. 43; *Tavener* v. *Emerick*, 9 Gratt. 220; *Alderson* v. *Miller*, 15 Gratt. 279.

If the tenancy terminates when the landlord has notice that the tenant is claiming the premises in his own right, as these authorities show is the case, then it follows that a purchase by the tenant from the landlord necessarily terminates the tenancy, and the possession of the same person after the purchase cannot be referred to his tenancy but he must be taken to be holding under his purchase.    The testimony in the case at bar proves that the agents of Mrs. Fetterman admitted that the plaintiff was in possession of the premises as the purchaser.    He continued in possession for fifteen years before any effort was made to eject him, and during all that time he paid no rent and none was demanded of him.    He paid the taxes on the property, and placed thereon valuable and permanent improvements of the value of at least eight hundred dollars.    And all this was done with the knowledge of the Fettermans or their agents.    Under these circumstances, it seems to me that to hold that, the relation of landlord and tenant continued after the purchase and the possession of the plaintiff treated

as a tenancy, is to disregard both reason and common sense.

The agency of W. B. Fetterman is questioned, but the testimony on that point is so conclusive that I do not deem it necessary to review it. In fact the testimony of the defendants, W. B. Fetterman and G. L. B. Fetterman, virtually establishes such agency. The only matter relied on to show a want of authority as such agent is, that he had no power of attorney. The law is well settled that neither the statute of frauds, nor the law of agency requires the authority of an agent to make parol contracts, whether oral or written, to be in writing. To make a specialty, or contract under seal, there must be an authority under seal. But a contract for the sale of lands need not be under seal. All that the statute requires is that the contract shall be in writing and signed by the party to be charged or his agent.

Without attempting to review or discuss the evidence, I am clearly of opinion that the contract of purchase is fully and satisfactorily proved; that it is sufficiently certain and definite in its terms; and that the improvements made on the premises and the possession of the plaintiff must be taken to refer to, and result from the contract of purchase, and entitle the plaintiff to a specific execution of said contract.

It is claimed by counsel for the appellant, Laughlin, that he is a purchaser of an interest in the property in suit for value without notice of the equity of the plaintiff, and having by said purchase acquired the legal title, as to him the plaintiff must fail whatever may be his rights against the Fettermans.

The deed to Laughlin is dated on the 19th day of January 1870, and upon its face and by its terms purports simply to convey the right, title, interest and claim of which George W. Fetterman became possessed or entitled as heir of Sarah B. Fetterman, deceased, being the one-fifth part of the estate of said Sarah B. Fetterman. There is no other description of the property than the general one above given—no specific tract or parcel of land is conveyed—and the record shows that Mrs. Fetterman died possessed of a large quantity of land in Taylor and, perhaps, other counties. By this indefinite and general conveyance, Laughlin acquired no more

than what descended to the said George W. Fetterman as heir of his mother, and, as we have seen, the mother had parted with her interest in the lots in suit to the plaintiff, the said George W., and, consequently, the said Laughlin, acquired no right or title to said lots against the rights and equities of the plaintiff. Such a general description of the land in the conveyance could not affect a subsequent purchaser with notice. *Mundy* v. *Vawter*, 3 Gratt. 518. And, moreover, it is abundantly proved that, long before and at the time of the conveyance to Laughlin, the plaintiff had been, and was, in the actual, open and notorious possession of the property claiming it as his own, and that it was generally known and called Campbell's property. The plaintiff being in possession was notice to Laughlin, and made it his duty to enquire the nature of his possession and had he made that enquiry he would have ascertained that he claimed under his purchase from Mrs. Fetterman. And being thus bound to make the enquiry he is chargeable with all the information such enquiry would have given him if diligently pursued. *Wilson* v. *Wall*, 6 Wall. 83; *French* v. *Loyal Company*, 5 Leigh 627.

Laughlin then being a purchaser chargeable with notice of the plaintiff's equitable title, he stands upon no higher ground than the Fetterman heirs; and as against them, as already held, the plaintiff is entitled to a decree for specific execution of his contract of purchase, so he is also entitled to a decree against the said Laughlin.

Upon the whole case, as shown by the record, I am clearly of opinion that the decree of the circuit court should be affirmed with costs to the appellee and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.